**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HULL'S ENVIRONMENTAL SERVICES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 6:24-cv-00479-JAR** |
| | ) | |
| **UNITED STATES OF AMERICA ex rel** | ) | |
| **SECRETARY OF ARMY/U.S. ARMY CORPS OF** | ) | |
| **ENGINEERS, et al.,** | ) | |
| | ) | |
| **Defendants/Cross-Plaintiffs.** | ) | |

---

**MARINA DEL REY, LLC'S ANSWER TO ARGONAUT INSURANCE COMPANY'S CROSSCLAIM FOR DECLARATORY JUDGMENT [DOC. NO. 11] AND COUNTERCLAIM AGAINST ARGONAUT INSURANCE COMPANY**

---

COMES NOW Defendant/Cross-Defendant Marina Del Rey, LLC (hereinafter "Marina Del Rey"), by and through its attorney of record, and files the following Answer to Defendant/Cross-Plaintiff Argonaut Insurance Company's (hereinafter "Argonaut") Crossclaim for Declaratory Judgment (hereinafter "Crossclaim"), Doc. No. 11, as well as Marina Del Rey's related Counterclaim against Argonaut. In support of the same, Marina Del Rey would respectfully show this Honorable Court as follows:

**MARINA DEL REY'S ANSWER TO**
**ARGONAUT'S CROSSCLAIM FOR DECLARATORY JUDGMENT**

1. In response to Paragraph No. 1 of Argonaut's Crossclaim, Marina Del Rey admits the same.

2. In response to Paragraph No. 2 of Argonaut's Crossclaim, Marina Del Rey admits the same.

1

3.      In response to Paragraph No. 3 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut has filed for declaratory relief pursuant to the stated authority but denies Argonaut's grounds and contentions for its Crossclaim and denies as to all else.

4.      In response to Paragraph No. 4 of Argonaut's Crossclaim, Marina Del Rey admits that venue is proper and that a dispute exists pursuant to the policy of insurance purchased from Argonaut by Marina Del Rey.   However, Marina Del Rey denies Argonaut's grounds and contentions for its Crossclaim and denies as to all else.

5.      In response to Paragraph No. 5 of Argonaut's Crossclaim, Marina Del Rey admits that subject matter jurisdiction is proper pursuant to the stated authority.  However, Marina Del Rey denies Hull Environmental Services, Inc.'s claims and causes of action made against Marina in the referenced underlying action and denies as to all else.

6.      In response to Paragraph No. 6 of Argonaut's Crossclaim, Marina Del Rey admits that supplemental jurisdiction is proper pursuant to the stated authority.  However, Marina Del Rey denies Hull Environmental Services, Inc.'s claims and causes of action made against Marina in the referenced underlying action and denies as to all else.

7.      In response to Paragraph No. 7 of Argonaut's Crossclaim, Marina Del Rey admits the same.

8.      In response to Paragraph No. 8 of Argonaut's Crossclaim, Marina Del Rey admits the same.

9.      In response to Paragraph No. 9 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

10.    In response to Paragraph No. 10 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

11.    In response to Paragraph No. 11 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

12.    In response to Paragraph No. 12 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

13.    In response to Paragraph No. 13 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

14.    In response to Paragraph No. 14 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

15.    In response to Paragraph No. 15 of Argonaut's Crossclaim, Marina Del Rey denies as to all.

**16.**     In response to Paragraph No. 16 of Argonaut's Crossclaim, Marina Del Rey denies as to all.

**17.**     In response to Paragraph No. 17 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

**18.**     In response to Paragraph No. 18 of Argonaut's Crossclaim, Marina Del Rey denies as to all.

**19.**     In response to Paragraph No. 19 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

**20.**     In response to Paragraph No. 20 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

**21.**     In response to Paragraph No. 21 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

**22.**     In response to Paragraph No. 22 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del

Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

23.     In response to Paragraph No. 23 of Argonaut's Crossclaim, Marina Del Rey lacks the requisite knowledge to either admit or deny the same.  Therefore, Marina Del Rey denies as to all.

24.     In response to Paragraph No. 24 of Argonaut's Crossclaim, Marina Del Rey admits that the language of the referenced and attached exhibit speaks for itself.  However, Marina Del Rey denies any characterization or summarization of that document that is inconsistent with its contents and denies as to all else.

25.     In response to Paragraph No. 25 of Argonaut's Crossclaim, Marina Del Rey admits the same.

26.     In response to Paragraph No. 26 of Argonaut's Crossclaim, Marina Del Rey admits the same.

27.     In response to Paragraph No. 27 of Argonaut's Crossclaim, Marina Del Rey admits the same.

28.     In response to Paragraph No. 28 of Argonaut's Crossclaim, Marina Del Rey denies as to all.

29.     In response to Paragraph No. 29 of Argonaut's Crossclaim, Marina Del Rey denies as to all.

30.     In response to Paragraph No. 30 of Argonaut's Crossclaim, Marina Del Rey denies as to all.

31.     In response to Paragraph No. 31 of Argonaut's Crossclaim, Marina Del Rey admits that the referenced lawsuit was filed.  However, Marina Del Rey denies Hull Environmental

Services, Inc.'s claims and causes of action made against Marina Del Rey in the referenced underlying action and denies as to all else.

32. In response to Paragraph No. 32 of Argonaut's Crossclaim for Declaratory Judgment, Marina Del Rey incorporates its responses to the corresponding paragraphs referenced therein.

33. In response to Paragraph No. 33 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy.  Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else.  For further response, *see* Counterclaim *infra*.

34. In response to Paragraph No. 34 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy.  Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else. For further response, *see* Counterclaim *infra*.

35. In response to Paragraph No. 35 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy.  Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else. For further response, *see* Counterclaim *infra*.

**36.** In response to Paragraph No. 36 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy. Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else. For further response, *see* Counterclaim *infra*.

**37.** In response to Paragraph No. 37 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy. Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else. For further response, *see* Counterclaim *infra*.

**38.** In response to Paragraph No. 38 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy. Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else. For further response, *see* Counterclaim *infra*.

**39.** In response to Paragraph No. 39 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy. Marina

Del Rey further denies Argonaut's related contentions as to coverage or damages owed and denies as to all else. For further response, *see* Counterclaim *infra*.

40.     In response to Paragraph No. 40 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, as well as any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy. Marina Del Rey further denies Argonaut's related contentions as to coverage or damages owed, and denies as to all else. For further response, *see* Counterclaim *infra*.

41.     In response to Paragraph No. 41 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

42.     In response to Paragraph No. 42 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

43.     In response to Paragraph No. 43 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

44.     In response to Paragraph No. 44 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

45.     In response to Paragraph No. 45 of Argonaut's Crossclaim for Declaratory Judgment, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

46.     In response to Paragraph No. 46 of Argonaut's Crossclaim, Marina Del Rey admits that a dispute objectively exists between the parties but denies as to all else. For further response, *see* Counterclaim *infra*.

47.    In response to Paragraph No. 47 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

48.    In response to Paragraph No. 48 of Argonaut's Crossclaim, Marina Del Rey incorporates its responses to the corresponding paragraphs referenced therein.

49.    In response to Paragraph No. 49 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

50.    In response to Paragraph No. 50 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

51.    In response to Paragraph No. 51 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

52.    In response to Paragraph No. 52 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of

the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

53.     In response to Paragraph No. 53 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

54.     In response to Paragraph No. 54 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

55.     In response to Paragraph No. 55 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

56.     In response to Paragraph No. 56 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

57.     In response to Paragraph No. 57 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

58.     In response to Paragraph No. 58 of Argonaut's Crossclaim, Marina Del Rey incorporates by reference its responses to the corresponding paragraphs referenced therein.

59.     In response to Paragraph No. 59 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**60.** In response to Paragraph No. 60 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**61.** In response to Paragraph No. 61 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**62.** In response to Paragraph No. 62 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**63.** In response to Paragraph No. 63 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**64.** In response to Paragraph No. 64 of Argonaut's Crossclaim, Marina Del Rey admits the same.

**65.**    In response to Paragraph No. 65 of Argonaut's Crossclaim, Marina Del Rey admits the same.

**66.**    In response to Paragraph No. 66 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**67.**    In response to Paragraph No. 67 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**68.**    In response to Paragraph No. 68 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**69.**    In response to Paragraph No. 69 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

**70.**    In response to Paragraph No. 70 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**71.**    In response to Paragraph No. 71 of Argonaut's Crossclaim, Marina Del Rey admits that a dispute objectively exists between the parties but denies as to all else. For further response, *see* Counterclaim *infra*.

**72.**    In response to Paragraph No. 72 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut is ostensibly seeking the referenced relief from this Honorable Court, but denies any contention or suggestion that Marina Del Rey has, to date, failed in supplying evidence as to liability or damages against Argonaut for all policy proceeds it is seeking. Marina Del Rey further denies as to all else. For further response, *see* Counterclaim *infra*.

**73.**    In response to Paragraph No. 73 of Argonaut's Crossclaim, Marina Del Rey incorporates its responses to the corresponding paragraphs referenced therein.

12

**74.**    In response to Paragraph No. 74 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**75.**    In response to Paragraph No. 75 of Argonaut's Crossclaim, Marina Del Rey admits that the referenced duty exists, as does the authority cited therewith.  However, Marina Del Rey denies that it breached that duty and as to all else. For further response, *see* Counterclaim *infra*.

**76.**    In response to Paragraph No. 76 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**77.**    In response to Paragraph No. 77 of Argonaut's Crossclaim, Marina Del Rey denies any contention or suggestion that it was less than truthful in the application process, and as to all else. For further response, *see* Counterclaim *infra*.

**78.**    In response to Paragraph No. 78 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**79.**    In response to Paragraph No. 79 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

**80.**    In response to Paragraph No. 80 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**81.**    In response to Paragraph No. 81 of Argonaut's Crossclaim, Marina Del Rey admits that a dispute objectively exists between the parties but denies as to all else. For further response, *see* Counterclaim *infra*.

**82.**    In response to Paragraph No. 82 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

83.     In response to Paragraph No. 83 of Argonaut's Crossclaim, Marina Del Rey incorporates its responses to the corresponding paragraphs referenced therein.

84.     In response to Paragraph No. 84 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

85.     In response to Paragraph No. 85 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

86.     In response to Paragraph No. 86 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

87.     In response to Paragraph No. 87 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies as to all else. For further response, *see* Counterclaim *infra*.

88.     In response to Paragraph No. 88 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies as to all else. For further response, *see* Counterclaim *infra*.

14

**89.** In response to Paragraph No. 89 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

**90.** In response to Paragraph No. 90 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

**91.** In response to Paragraph No. 91 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**92.** In response to Paragraph No. 92 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**93.** In response to Paragraph No. 93 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**94.** In response to Paragraph No. 94 of Argonaut's Crossclaim, Marina Del Rey incorporates its responses to the corresponding paragraphs referenced therein.

**95.** In response to Paragraph No. 95 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**96.** In response to Paragraph No. 96 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of

the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

97.    In response to Paragraph No. 97 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

98.    In response to Paragraph No. 98 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

99.    In response to Paragraph No. 99 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

100.    In response to Paragraph No. 100 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents.  However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**101.** In response to Paragraph No. 101 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**102.** In response to Paragraph No. 102 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

**103.** In response to Paragraph No. 103 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

**104.** In response to Paragraph No. 104 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

**105.** In response to Paragraph No. 105 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

**106.** In response to Paragraph No. 106 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

**107.** In response to Paragraph No. 107 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**108.** In response to Paragraph No. 108 of Argonaut's Crossclaim, Marina Del Rey admits that a dispute objectively exists between the parties but denies as to all else. For further response, *see* Counterclaim *infra*.

**109.** In response to Paragraph No. 109 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

**110.** In response to Paragraph No. 110 of Argonaut's Crossclaim, Marina Del Rey incorporates its responses to the corresponding paragraphs referenced therein .

**111.** In response to Paragraph No. 111 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**112.** In response to Paragraph No. 112 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**113.** In response to Paragraph No. 113 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**114.** In response to Paragraph No. 114 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**115.** In response to Paragraph No. 115 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**116.** In response to Paragraph No. 116 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy constitutes the best evidence of its contents. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else.

**117.** In response to Paragraph No. 117 of Argonaut's Crossclaim, Marina Del Rey admits that the Policy terms speak for themself. However, Marina Del Rey denies that such includes all relevant terms constituting the Policy, any characterization or summarization of the Policy that is inconsistent with the contents and context of the Policy, and all else. For further response, *see* Counterclaim *infra*.

**118.** In response to Paragraph No. 118 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

119.    In response to Paragraph No. 119 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

120.    In response to Paragraph No. 120 of Argonaut's Crossclaim, Marina Del Rey admits that Argonaut ostensibly made the referenced determination but denies its accuracy or legal effect, and as to all else. For further response, *see* Counterclaim *infra*.

121.    In response to Paragraph No. 121 of Argonaut's Crossclaim, Marina Del Rey admits that it has made a proper demand for all owed but unpaid insurance proceeds but denies as to all else. For further response, *see* Counterclaim *infra*.

122.    In response to Paragraph No. 122 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

123.    In response to Paragraph No. 123 of Argonaut's Crossclaim, Marina Del Rey admits that a dispute objectively exists between the parties but denies as to all else. For further response, *see* Counterclaim *infra*.

124.    In response to Paragraph No. 124 of Argonaut's Crossclaim, Marina Del Rey denies as to all. For further response, *see* Counterclaim *infra*.

125.    Paragraph No. 125 of Argonaut's Crossclaim appears to be blank, therefore requiring no response from Marina Del Rey.  However, in an abundance of caution, to the extent that said paragraph encompasses the subsequent "WHEREFORE" paragraph or sub-paragraphs, Marina Del Rey denies as to all.

126.    In regard to the final "WHEREFORE" paragraph and sub-paragraphs of Argonaut's Crossclaim, including the prayer or request for relief within, Marina Del Rey denies as to all, although it avers that no answer or further response is required.

## AFFIRMATIVE DEFENSES

**1.** Marina Del Ray incorporates by reference its Counterclaim *infra*.

**2.** The Policy constitutes an adhesion contract, meaning it must be strictly construed against Argonaut and in favor of Marina Del Ray.

**3.** Argonaut's investigation of the underlying claim was inadequate and unreasonable, in whole or in part.

**4.** Argonaut's investigation of the underlying claim was pretextual, making it illegitimate, and designed to achieve an outcome contrary to the language of the Policy.

**5.** Argonaut's investigation of the underlying claim was pretextual, making it illegitimate, and designed to achieve an outcome contrary to the reasonable expectations of Marina Del Ray, its insured.

**6.** Documentary evidence that is extrinsic to the Policy must be excluded pursuant to the parol evidence rule.

**7.** Testimonial evidence that is extrinsic to the Policy must be excluded pursuant to the parol evidence rule.

**8.** Argonaut should be estopped from relying on and/or using evidence – and, by extension, introducing the same at trial – that the insurer failed to obtain before issuing its payment decision on the underlying claim.

**9.** Waiver.

**10.** Laches.

**11.** Argonaut's claim for declaratory relief is barred by the statute of limitations.

**12.** Argonaut's claim for declaratory relief, which is equitable in nature, should be barred by the doctrine of unclean hands.

21

13.     Argonaut's interpretation of the Policy is contrary to its plain terms and conditions.

14.     Argonaut's claim for mutual mistake fails because Marina Del Ray's associated conduct was not inequitable, in whole or in part.

15.     Argonaut cannot prove each element of its claim for mutual mistake by clear and convincing evidence, as required.

16.     Reformation, an equitable remedy, is unavailable to Argonaut because Argonaut does not come to the Court with clean hands.

17.     Marina Del Ray submitted notice of its loss to Argonaut in a manner and form acceptable under Oklahoma law.

18.     Marina Del Ray is entitled to statutory interest and attorney's fees pursuant to 36 O.S. § 3629.

19.     Marina Del Ray did not make a material misrepresentation to Argonaut.

20.     Even if Marina Del Ray made a misrepresentation to Argonaut, which it did not, the same was immaterial, negating Argonaut's associated claim.

21.     Even if Marina Del Ray made a misrepresentation to Argonaut, which it did not, it was unreasonable for Argonaut to rely upon the same.

22.     Rescission, an equitable remedy, is unavailable to Argonaut because Argonaut does not come to the Court with clean hands.

23.     It would be inequitable for the Court to rescind the Policy, as requested by Argonaut, because Marina Del Ray paid premiums to Argonaut as consideration for the same.

24.     Argonaut wrote coverage for Marina Del Ray in the absence of adequate underwriting, estopping Argonaut from invoking the Policy exclusions relied upon in the Crossclaims.

25.    The Policy exclusions forming the basis for certain of Argonaut's Crossclaims are unenforceable under Oklahoma law.

26.    The Policy exclusions forming the basis for certain of Argonaut's Crossclaims have been misapplied based on applicable Oklahoma law.

27.    Marina Del Ray reserves the right to amend its Answer and Affirmative Defenses, as warranted by the evidence and permitted by the Court.

WHEREFORE, having fully answered Argonaut's Crossclaim for Declaratory Judgement, Marina Del Rey respectfully requests judgment in its favor and against Argonaut, and for any and all just and equitable relief as this Court deems appropriate.

## MARINA DEL REY'S COUNTERCLAIM AGAINST ARGONAUT

Marina Del Rey hereby asserts the following Counterclaim against Argonaut, and in support of the same, would show this Honorable Court as follows:

1.    Marina Del Rey brings the present Counterclaim against Argonaut (the "Counterclaim") based upon a first party insurance dispute regarding extensive wind damage to a two-hundred slip commercial marina located on Lake Texoma at 7007 Marine Drive in Kingston, Oklahoma.  *See* attached Exhibit 1, reflecting the configuration of the marina, including docks, slips, wharves and piers.

2.    Specifically, Argonaut issued Policy No. 726OM5504-00 (the "Policy") to Marina Del Rey in order to provide insurance coverage for, among other perils, windstorm damage to the extensive piers, wharves, docks and connected slips surrounding the lake itself.   The Policy term extended from October 24, 2023, through October 24, 2024.  *See* attached Exhibit 2, a true and correct copy of the one hundred nineteen (119) page Policy.

23

3.      On or about May 16, 2024, the subject property sustained damage (the "Loss") from a weather-related event, namely a severe windstorm. A timely claim was made by Marina Del Rey to Argonaut, which assigned Claim No. MUA-0002510 (the "Claim") to the Loss.

4.      To date, Argonaut has grossly underestimated the amount of structural damage suffered at the Loss and resultantly underpaid the Claim.  Moreover, it has attempted through its Crossclaim to improperly diminish the limits of coverage available under the Policy by asking this Honorable Court to negate the legal effect of the specific coverage terms purchased by Marina Del Rey, making this Counterclaim necessary.

## FACTS

5.      The factual underpinnings of the present matter are largely undisputed.  Marina Del Rey is a freshwater marina dotting the exterior of Lake Texoma.  It consists of seventeen (17) docks of varying lengths, sizes and ages.  In sum, the docks accommodate approximately two hundred (200) adjacent slips, all of which are comprised of steel and aluminum fabrication and provide covered protection for the vessels renting space monthly.  Completing the property are additional wharves and piers servicing its consumer base with restaurants and gas stations.

6.      The subject marina was purchased in 2016, and re-branded as Marina Del Ray. After a significant investment in improvements and remedial measures, the subject marina was able to maintain a consistent customer base, both in Oklahoma and nationally.

7.      In late 2023, Marina Del Rey purchased the Policy from Argonaut to provide wharf and pier coverage for, *inter alia*, structural losses stemming from wind, flood, wave action and collision resulting from wind, flood, or wave action.  *See* Ex. B at 17 (of 119).  The Policy covered all referenced docks, slips, wharves and piers, as well as their attached structures.  *See id.*

24

8.      Per the binder supplied by Argonaut to Marina Del Rey, coverage went into effect for a one-year period, beginning on October 24, 2023.  All requisite premiums were paid by the policyholder, and coverage was neither cancelled nor suspended during the twelve (12) month proscription period defined by the Policy itself.  *See* Ex. B at 1.

9.      The PIERS AND WHARVES DECLARATIONS set forth the locations, specified structures and respective limits as to all elements of the marina itself, as follows:

**PIERS AND WHARVES – DECLARATIONS**

| INSURED AND MAILING ADDRESS | POLICY NUMBER | |
|---|---|---|
| Marina Del Rey, LLC<br>7007 Marina Drive<br>Kingston, OK 73439 | 726OM5504-00 | |
| **LOCATION(S):**  Underwriters shall be liable in respect to covered property only at the following location(s): | | |
| 1. | 7007 Marina Drive, Kingston, OK 73439 | |

**DESCRIPTION/LIMITS OF INSURANCE**

| Location Number | Description | Limits of Insurance |
|---|---|---|
| Location 1 | 1985, Steel, Floating, Covered, 25 Slips | $375,000 |
| Location 1 | 1981, Steel, Floating, Covered, 7 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, Covered, 6 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, covered, 10 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, covered, 7 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, Covered | $ 75,000 |
| Location 1 | 2012, Steel, Floating, Covered, 13 Slips | $400,000 |
| Location 1 | 2010, Steel, Floating, Covered, 10 Slips | $350,000 |
| Location 1 | 2011, Steel, Floating, Covered, 16 Slips | $350,000 |
| Location 1 | 2011, Steel, Floating, Covered, 11 Slips | $200,000 |
| Location 1 | 2016, Steel, Floating, Covered, 4 Slips | $100,000 |
| Location 1 | 2016, Steel, Floating, Covered, | $175,000 |
| Location 1 | 2016, Steel, Floating, Covered, | $420,000 |
| Location 1 | 2017, Steel, Floating, Covered, 28 Slips | $675,000 |
| Location 1 | 2017, Steel, Floating, Covered, 16 Slips | $650,000 |
| Location 1 | 2018, Steel, Floating, Covered, 6 Slips | $ 75,000 |
| Location 1 | Contents | $ 50,000 |
| Location 1 | BII | $720,000 |

| DEDUCTIBLE: | VALUATION/COINSURANCE: |
|---|---|
| $50,000 except<br>$300,000 wind, flood, wave action,<br>collision from wind, flood, and wave action<br>BII: 14 days | RCV / 90% 15 years and newer<br>ACV / 80% all others |

*See* Ex. B at 17.  The Declarations provide the coverage amounts on a dock-by-dock basis, reflect the perils insured against and the applicable deductible based upon the same.  *See id.*

10.     The Policy further contains a PIERS AND WHARVES COVERAGE form (MUA 6013 0221) stating in relevant part via Clauses 1, 2 and 3, as follows:

**PIERS AND WHARVES COVERAGE**

In consideration of an additional premium **shown on the Piers and Wharves Coverage Declarations page**, it is understood and agreed, scheduled piers and wharves (including contents if shown) at the following location are covered as per the limits of insurance, terms, conditions, and exclusions contained herein:

| LOCATION | LIMITS OF INSURANCE |
|---|---|
| See Declarations Page | See Declarations Page |

1.  This insurance to cover physical loss or damage directly caused by fire, lightning, explosion, windstorm, hail, flood, wave action, frost, theft, weight of ice and/or snow, collision with ship, vessel or floating object and contact with aircraft or object dropped therefrom.

2.  All claims shall be subject to a deductible as shown in the Declarations each accident or occurrence, except claims arising out of windstorm, flood, weight of ice and/or snow, or wave-action occurring during any one period of 72 hours shall be deemed to be one occurrence and shall be subject to a deductible shown in the Declarations.  The amount of the deductible shall be subtracted from the total limit of insurance shown on the Declarations for each accident or occurrence.

3.  The Insurer shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

Ex. B at 64.  Clause 3 is one focal point of Argonaut's argument in attempting to limit the amount of coverage purchased by Marina Del Rey to Actual Case Value ("ACV"), which is calculated by reducing the full cost of property replacement through a deduction for depreciation.

11. However, the Policy contained Form No. MUA 6018 1109, critically providing as follows:

**REPLACEMENT COST - PIERS AND WHARVES**

This endorsement modifies insurance provided under the following:

**PIERS AND WHARVES COVERAGE**

It is understood and agreed that Clause 3 of the Piers and Wharves Coverage is deleted in its entirety and replaced with the following:

The Company shall not be liable beyond the cost to repair or replace the property with the same material of like kind and quality without deduction for depreciation.

*See* Ex. B at 116.  This form conspicuously alters the coverage for the above cited Clause 3, converting the same into Replacement Cost Value ("RCV") for all listed elements on the Policy's Declaration Page.  Most notably, it confirms coverage for repair or replacement "without deduction for depreciation."  *See id.*  This language, both drafted and incorporated into the Policy by Argonaut, specifically negates the above-referenced damage limitation sought by Argonaut.

12.    On or about May 16, 2024, Marina Del Ray's entire property was struck by a severe windstorm (the "Storm"). The steel and aluminum docks were left either disfigured or completely submerged in the water below. Many of their respective roofing elements were stripped and blown either into Lake Texoma or across the Property itself. Those remaining were cracked, cratered and completely dislodged from their respective docks. Finally, electronic components servicing individual slips were either partially or fully submerged, rendering them useless and creating a severe safety hazard for the public.

13.    After the Claim was made by Marina Del Rey in a timely fashion, an investigation was undertaken by Argonaut into the severity and extent of the loss. Although insufficient in amount, over a million dollars in damage was confirmed and coverage was extended. Ultimately, after applying Marina Del Rey's $300,000 deductible, Argonaut issued payments totaling $1,158,685.00.

14.    However, not only did such payments fail to reflect the amount of damage at the subject marina, but it was accompanied by Argonaut's position that RCV did not apply to the older docks, which were constructed between 1981 and 1985. Rather, Argonaut disregarded the above cited Policy Form No. MUA 6018 1109 and applied the ACV damage calculation to the older marina docks, as provided by a separate form that was never provided with or incorporated into the Policy. To date, Argonaut maintains that position and refuses to provide coverage in keeping with its own drafted Policy terms.

15.    At present, Marina Del Rey has suffered structural losses with a combined RCV value of $15,295,386.49, along with Business Income Loss and related additional expenses of $720,000.00 and Debris Removal costs totaling $67,000.00. All told, Marina Del Rey's losses

under the Policy total $16,082,386.49. After reducing the same for its $300,000.00 deductible and the prior payments of $1,158,685.00, the overdue Policy payment totals $14,623,701.49.

16.    Despite Marina Del Rey's cooperation throughout every step of the Claim, and in disregard of its own Policy language allowing full RCV coverage, Argonaut continues to refuse to properly and timely resolve the Claim and instead filed its Crossclaim against Marina Del Rey.

<u>**COUNT I - BREACH OF CONTRACT**</u>

17.    Marina Del Rey incorporates Paragraphs 1-16 by reference, as if fully restated within Count I.

18.    Marina Del Rey purchased the Policy from Argonaut, which was in effect at the time of the Loss.

19.    Argonaut, in exchange for valuable consideration, agreed to insure the Property under the Policy.

20.    The Policy insured the Property from the covered weather-related damage, logically including that by wind.

21.    Marina Del Rey performed its contractual obligations by making policy premium payments and timely reporting of covered losses upon discovery of same. All Policy conditions were complied with by Marina Del Rey throughout the Claim process.

22.    In contrast, Argonaut materially breached the contract by failing to provide adequate coverage following the underlying claim filed by Marina Del Rey. Moreover, despite filing a claim which notified Argonaut of this loss, Marina Del Rey is yet to receive full compensation for the damage covered, as required by the Policy it purchased. Argonaut has failed to timely investigate, evaluate, and make proper payments to Plaintiff regarding the two weather events.

28

23.     Argonaut's unreasonable refusal to pay for the full value of the damage to the Property constitutes a breach of contract.

24.     Due to Argonaut's breach of the Policy, Marina Del Rey sustained damages by way of unpaid insurance proceeds and benefits, has been forced to retain counsel, and further has been damaged by a sum to be determined at trial and final judgment.

25.     Argonaut is well aware of Marina Del Rey's damages which include, without limitation, actual damages, interest, and consequential damages, attorney fees, costs, resulting damages from required remediation, and other foreseeable expenses resulting from Argonaut's breach of contract.  Accordingly, Marina Del Rey is entitled to judgment against Argonaut for the damages sustained while covered by such contract in an amount of at least $15,000,000.00.

## COUNT II – BAD FAITH

26.     Marina Del Rey incorporates Paragraphs 1-25 by reference, as if fully restated within Count II.

27.     Argonaut owed a duty to deal fairly and in good faith with Marina Del Rey in the handling of the Claim.

28.     Argonaut breached its duty to deal fairly and in good faith with Marina Del Rey by putting its own interests ahead of its policyholder in an effort to demoralize and overwhelm Marina Del Rey.  Argonaut further treated Marina Del Rey extremely poorly  and improperly in the hopes that it would merely accept Argonaut's behavior, its improper investigation and handling of his claims, and accept its low-ball, deceptive, and delayed payment of insurance proceeds.

29.     Argonaut encourages this type of claims handling behavior by disregarding and overlooking the duty of good faith and fair dealing owed to its insureds in favor of its own profitability.

30.    Marina Del Rey seeks recoupment of interest as well as its attorney fees in an amount to be determined by a jury.

31.    Argonaut has acted intentionally, maliciously, or in reckless disregard for the rights of Marina Del Rey.  As such, Marina Del Rey is entitled to recover punitive damages from Defendant in an amount in excess of an additional $12,000,000.00.

WHEREFORE, Plaintiff Marina Del Rey prays for judgment against the Argonaut for actual and punitive damages, all in excess of $25,000,000.00, and any additional relief this Honorable Court deems proper and just.

## JURY DEMAND

Marina Del Rey respectfully requests a jury trial upon all issues of fact herein.

## CONCLUSION

WHEREFORE, Marina Del Rey prays this Honorable Court DENY Argonaut's Request for Declaratory Judgment and instead enter judgment in favor of Marina Del Rey on Counts I and II, that the Court award actual damages, consequential damages including without limitation the loss of future business income from related commercial entities, pre-judgment interest, additional statutory damages, post-judgment interest, penalty damages, reasonable and necessary attorney fees, collectible court costs, and for all such other further relief, whether pled or unpled within this Counterclaim, to which Marina Del Rey may be justly entitled.

Respectfully submitted by:


*s/Matthew K. Felty*
Matthew K. Felty, OBA #31057
Joshua K. Hefner, OBA # 30870
**RYAN WHALEY, PLLC**
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040 (Telephone)
(405) 239-6766 (Facsimile)
mfelty@ryanwhaley.com
jhefner@ryanwhaley.com

*-and-*

Benjamin P. Barmore,
EDOK Federal Bar #24073076TX
**HUNZIKER & BARMORE, PLLC**
The Lyric Tower
440 Louisiana St., Suite 1825
Houston, TX 77002
Telephone: 281.817.6000
Facsimile: 281.816.9025
Benjamin@HunzBarLaw.com

**COUNSEL FOR MARINA DEL REY, LLC**


**JURY TRIAL DEMANDED**

**ATTORNEYS' LIEN CLAIMED**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of May, 2025, a true and correct copy of the forgoing document was filed using the Court's electronic filing and notification system (ECF) to all known parties of record.


*/s/Matthew K. Felty*
Matthew K. Felty

# EXHIBIT 1



# EXHIBIT 2



Hull & Company, LLC
2 Oakwood Blvd., Ste 100
Hollywood, FL  33020
(954)527-4855  Fax:  (866)449-8449
Web: www.hullco.com
Managing General Agents ■ Wholesale Insurance Brokers

Producing Agency:    Alliant Ins. Services Inc -Boca Raton
Agent Name:          Erin Davis
                     2300 Glades Rd
                     Ste 250
                     Boca Raton, FL  33431

Name of Assured:     Marina Del Rey, LLC
Address:             7007 Marina Dr.
                     Kingston, OK  73439
                     726OM5504-00

Effective 12:01 a.m. local standard time from 10/24/2023 to 10/24/2024.

Acting upon instructions form the above referenced Producing Agent, the Insurance outlined in the attached Cover Note #   726OM5504-00   has been effected.

| COVERAGE |
|---|

As per attached Cover Note.

| PREMIUM |
|---|

| Premium: | $283,004.00 |
|---|---|
| Provider Fee | $425.00 |
| **Total:** | **$283,429.00** |

**Minimum Earned Premium Applies**                **Flat Cancellation Not Permitted**

| SECURITY |
|---|

As per attached Cover Note.

By: _____

David O'Keeffe Lic# P082520



**Argonaut Insurance Company**
(a stock company)
225 W. Washington Street, 6th Floor
Chicago, IL 60606

## COMMERCIAL LINES POLICY
## COMMON POLICY DECLARATIONS

**POLICY NO.:**   726OM5504-00

**NAMED INSURED AND ADDRESS:**
Marina Del Rey, LLC
7007 Marina Dr.
Kingston, OK 73439

**PRODUCER:**
Hull & Company, LLC
2 Oakwood Blvd.
Hollywood, FL 33020
Through Marine Underwriters of America

**POLICY PERIOD:    From**: 10/24/2023 **To:** 10/24/2024 **at 12:01 A.M. Standard time at your mailing address shown above.**

**BUSINESS DESCRIPTION**:

__Individual__Joint Venture _Partnership _X_ Limited Liability Company (LLC) __Organization (Other than Partnership, LLC or Joint Venture)

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | |
|---|---|
| Marine General Liability including Marina Operators Legal Liability | $  21,404.00 |
| Hull and Machinery | $   9,847.00 |
| Protection and Indemnity | $   6,000.00 |
| Piers & Wharves | $245,750.00 |
| Contractor's Equipment | $      363.00 |
| | |
| Total Premium | $283,004.00 |
| Inspection Fee | $      425.00 |

25% of the Policy Premium is fully earned as of the effective date of this policy and is not subject to return or refund.

**Form(s) and Endorsement(s) made a part of this policy at time of issue\*:**  See attached form schedule
*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing false or deceptive statement is guilty of insurance fraud.

**COMPANY REPRESENTATIVE:**
Marine Underwriters of America
2040 North Loop 336 West, Suite 225
Conroe, TX 77304

Authorized Representative

MUA 0036 0123

# SIGNATURE PAGE

IN WITNESS WHEREOF, the company issuing this policy has caused this policy to be signed by its President and its Secretary and countersigned (if required) on the Declarations page by a duly authorized representative of the company.  This endorsement is executed by the company stated in the Declarations.

Argonaut Insurance Company

**President**                    **Secretary**

MUA 0036 0123

## FORMS SCHEDULE

MUA 0036 0123  Argo Common Dec Page
PRIVACY NOTICE – 0415 – Privacy Policy – Argo US
IL P 001 0104      OFAC Advisory Notice to Policy Holders
MUA 0001R 1216 Marine GL Dec Page
MUA 0002 1109 Hull and P&I Dec Page
MUA 0007 1109 Piers Dec Page
MUA 0011 1109 Contractor's Equipment Dec Page
MUA 1001 0221 Marine General Liability – Marina Operators Legal Liability
MUA 2000 1109 American Institute Hull Form
MUA 3000 1109 P&I
MUA 6013 0221 Piers and Wharves Coverage
MUA 6017 0221 Piers and Wharves Business Interruption
MUA 8003 0415 Common Policy Conditions
MUA 8002 1109 Inland Marine Conditions
MUA 8001 1216 Contractor's Equipment
MUA 1000 0222 Hazards Excluded
MUA 1015 0410 Diving Exclusion
MUA 1019 1109 Cross Liability Exclusion
MUA 1024 1109 Designated Operations Exclusion
MUA 1025 1109 Leased Worker Exclusion
MUA 1029 1109 Liability Exclusions and Limitations
MUA 1039 1109 Paint Overspray Exclusion
MUA 1043 1109 Sudden and Accidental Pollution (watercraft)
MUA 1045 1109 Subcontractor Certificate Warranty
MUA 1048 0610 Terrorism Exclusion
MUA 1049 0814 Traveling Workman
MUA 1059 0711 Houseboat Fire Protections
MUA 1060 0711 Houseboat Electrical Warranties
MUA 1061 0711 Houseboat Shore Power Warranties
MUA 2001 1109 SR&CC Hull
MUA 2011 1109 FPA Machinery
MUA 2014 1109 Nuclear Exclusion
MUA 2016 1109 Privilege to Charter
MUA 3008 1109 Cancellation and Returns Only
MUA 3014 1109 Crew/Contractor/Subcontractor Exclusion
MUA 3020 1109 Diving Exclusion – P&I
MUA 3021C 0219 Recreational In Water Activities Exclusion
MUA 3023 1109 Liquor Liability Exclusion
MUA 3029 0119 Total and Absolute Pollution Exclusion
MUA 3033 1109 Cross Liability Exclusion
MUA 6018 0120 Replacement Cost
MUA 6020 0120 Deletion of Perils
MUA 8017 1109 Flood Exclusion
MUA 8026 1109 Total Loss of Equipment

MUA 0036 0123

# IMPORTANT INFORMATION FOR POLICYHOLDERS

## ARKANSAS

In the event you need to contact someone about this policy for any reason, please contact your agent first. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Arkansas Insurance Department at:

ARKANSAS INSURANCE DEPARTMENT
Consumer Services Division
1200 W. 3rd St.
Little Rock, AR 72201-1904
Telephone: (501) 371-2640
Toll Free: 1-800-852-5494

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Insurance Department, please have your policy number available.

## FLORIDA

If you have specific questions about your policy, YOU MAY DIRECT THEM TO YOUR AGENT.

If you have been unable to contact or obtain satisfaction from your agent, you may contact the insurance company issuing this policy at the following address and telephone number:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

MUA 0036 0123

**IDAHO**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**PROBLEMS WITH YOUR INSURANCE?** — If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem. You may contact the insurance company issuing this policy at the following address and telephone number:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

You may also contact the Idaho Department of Insurance for assistance at the following:

Idaho Department of Insurance
Consumer Affairs
700 W State Street, 3rd Floor
P. O. Box 83720
Boise, ID 83720-0043

1-800-721-3272 or
(208) 334-4250 or
www.DOI.Idaho.gov

**ILLINOIS**

As our policyholder, your satisfaction is very important to us. If you have any questions about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent or us.

To contact us, write or call:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

If you are not satisfied after discussions with your insurance agent or us, you may contact the Illinois Department of Insurance with your complaint:

To contact the Department, write or call:

Springfield Office:
320 W. Washington Street
Springfield, IL 62767-0001

Chicago Office:
122 S. Michigan Ave., 19th Floor
Chicago, IL 60603

CONSUMER ASSISTANCE HOTLINE: 1-866-445-5364

This notice is for information only and does not become a part or condition of this policy

MLIA 0026 0122

**INDIANA**

**Any questions regarding your policy or coverage should be directed to:**

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

If you:

a.    need the assistance of the governmental agency that regulates insurance; or

b.    have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, IN 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

This notice is for information only and does not become a part or condition of this policy.

**MASSACHUSETTS**

**IMPORTANT NOTICE TO ALL MASSACHUSETTS POLICYHOLDERS:**

In the event of a complaint, please contact us at:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

If you have been unable to contact or obtain satisfaction from the Insurer, you may contact the Massachusetts Division of Insurance to obtain information to make a complaint at:

Commonwealth of Massachusetts
Divisions of Insurance
1000 Washington Street, Suite 810
Boston, MA 02118-6200
www.mass.gov/doi

**SOUTH CAROLINA**

As our policyholder, your satisfaction is very important to us. If you have any questions about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent or us.

To contact us, write or call:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808


**TENNESSEE**

If you have specific questions about your policy, YOU MAY DIRECT THEM TO YOUR AGENT.

If you have been unable to contact or obtain satisfaction from your agent, you may contact the insurance company issuing this policy at the following address and telephone number:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

### Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company. If you don't, you may lose your right to appeal.

**Argo Group US**
To get information or file a complaint with your insurance company:

      **Call:**           **General Counsel toll free at 1-877-474-8808**

      Online:          argolimited.com
      Email:           ConsumerComplaints@ArgoGroupUS.com
      Mail:            General Counsel
                     Argo Group US, Inc.
                     P.O. Box 469012
                     San Antonio, TX 78246

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:
      Call with a question:    1-800-252-3439
      File a complaint:        www.tdi.texas.gov
      Email:                ConsumerProtection@tdi.texas.gov
      Mail:                 MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

### ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros. Si no lo hace, podría perder su derecho para apelar.

**Argo Group US**
Para obtener información o para presentar una queja ante su compañía de seguros:

      **Llame a:**         **General Counsel llamada gratuita al 1-877-474-8808**

      En línea:               argolimited.com
      Correo electrónico:    ConsumerComplaints@ArgoGroupUS.com
      Dirección postal:      General Counsel
                     Argo Group US, Inc.
                     P.O. Box 469012
                     San Antonio, TX 78246

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

      Llame con sus preguntas al:    1-800-252-3439
      Presente una queja en:  www.tdi.texas.gov
      Correo electrónico:         ConsumerProtection@tdi.texas.gov
      Dirección postal:         MC 111-1A, P.O.Box 149091, Austin, TX 78714-9091

**VIRGINIA**

In the event you need to contact someone about this insurance for any reason, please contact your agent first. If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the insurance company issuing this insurance at the following address and telephone number:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246.
Toll Free: 1-877-474-8808

If you have been unable to contact or obtain satisfaction from the Company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

Property and Casualty Division
Bureau of Insurance
P.O. Box 1157
Richmond, VA 23218

In Virginia call: 1-800-552-7945
Outside Virginia call: 1-804-371-9741

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, Company or the Bureau of Insurance, have your policy number available.


**WISCONSIN**

**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**

**PROBLEMS WITH YOUR INSURANCE?** — If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem. You may contact the insurance company issuing this policy at the following address and telephone number:

General Counsel
Argo Group US, Inc.
P. O. Box 469011
San Antonio, Texas 78246
Toll Free: 1-877-474-8808

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint. You can contact the **OFFICE OF THE COMMISSIONER OF INSURANCE** by contacting:

**OFFICE OF THE COMMISSIONER OF INSURANCE**
Complaints Department
125 South Webster Street
P.O. Box 7873
Madison, WI 53707-7873
Toll Free Telephone: 1-800-236-8517
Telephone: 608-266-0103

MUA 0036 0123



A. M. Best Rating A-
argolimited.com

## Claim Reporting Services

Welcome to Argonaut Insurance Company. We appreciate your business! Please refer to this document for reporting claims and contacting our claims office.

The preferred method for reporting claims is to scan a completed ACORD notice and send it by e-mail address listed below. Claims can also be reported by phone.

**Email:**    marineclaims@propointclaims.com
**Phone:**    936-230-5537 (ext. 4- Claims)

*For specific claims questions, please contact your assigned adjuster. If the adjuster is unknown, call 936.777.8007 to be connected with the Claims Team Lead for ProPoint Marine Claims (a DOXA Insurance Holdings Company).*



ARGONAUT
INSURANCE COMPANY



Marine
Underwriters
of America

Rev. 01/2023

MUA 0036 0123



# Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers. We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers. Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

## Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information. As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required. This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act. Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

## Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group. Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

## Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records. Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media. Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

**Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants. If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC. This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# *Marine Underwriters of America*

## MARINE GENERAL LIABILITY POLICY - DECLARATIONS

| INSURED AND MAILING ADDRESS | POLICY NUMBER |
|---|---|
| Marina Del Rey, LLC<br>7007 Marina Drive<br>Kingston, OK 73439 | 726OM5504-00 |

**LOCATION(S):** Underwriters shall be liable in respect to covered operations only, when such operations are being performed, are to be performed, or have been performed at the following location(s):

| 1. | 7007 Marina Drive, Kingston, OK 73439 |
|---|---|
| | |
| | |

**LIMITS OF LIABILITY:**

| | |
|---|---|
| $2,000,000 | General Aggregate |
| $1,000,000 | Products - Completed Operations Aggregate |
| $1,000,000 | Personal And Advertising Injury |
| $1,000,000 | Each Occurrence |
| $1,000,000 | Marine Operations Legal Liability |
| $    50,000 | Damage To Premises Rented To You |
| $     1,000 | Medical Expense |

**DEDUCTIBLE:**

$2,500

**RATES/PREMIUM:**

| MARINE GENERAL LIABILITY | RATE PER $100 GROSS RECEIPTS |
|---|---|
| | 1.1% |
| Pool | $1,000 - Flat |
| Event Pavilion | $1,000 - Flat |
| | |
| | |
| | |

| | |
|---|---|
| **DEPOSIT PREMIUM** | $19,404.00 |
| **TOTAL PREMIUM DUE AND PAYABLE AT INCEPTION** | $21,404.00 |
| **MINIMUM PREMIUM** | $21,404.00 |

## READ YOUR POLICY CAREFULLY

MUA 0001R 1216

# *Marine Underwriters of America*

## HULL/PROTECTION AND INDEMNITY – DECLARATIONS

| INSURED AND MAILING ADDRESS | POLICY NUMBER |
|---|---|
| Marina Del Rey, LLC<br>7007 Marina Drive<br>Kingston, OK 73439 | 726OM5504-00 |

**SCHEDULE OF VESSELS:** Underwriters shall be liable in respect to covered vessels as follows:

| Vessel Name and Description | Amount Insured | Hull Deductible | Hull Rate | P&I Limit | P&I Deductible | P&I Premium |
|---|---|---|---|---|---|---|
| Vessel #1: Aloha BCE Pontoon WAC36370H920 | $61,689 | $2,500 | 2.25% | $1,000,000 CSL | $2,500 | $6,000 |
| Vessel #2: Aloha Pontoon WAC36748H021 | $46,004 | $2,500 | 2.25% | Included in Above | $2,500 | Included in Above |
| Vessel #3: Aloha Pontoon WAC36821K021 | $100,708 | $2,500 | 2.25% | Included in Above | $2,500 | Included in Above |
| Vessel #4: Aloha Pontoon WAC36888L021 | $67,300 | $2,500 | 2.25% | Included in Above | $2,500 | Included in Above |
| Vessel #5: Aloha Pontoon WAC36905A121 | $70,935 | $2,500 | 2.25% | Included in Above | $2,500 | Included in Above |
| Vessel #6: 2021 Aloha Pontoon WAC36961C121 | $75,000 | $2,500 | 2.25% | Included in Above | $2,500 | Included in Above |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| NAVIGATION WARRANTY: Lake Texoma | |
|---|---|
| LOSS PAYABLE: N/A | |
| TOTAL HULL PREMIUM | $9,487.00 |
| TOTAL P&I PREMIUM | $6,000.00 |
| | |
| TOTAL PREMIUM DUE AND PAYABLE AT INCEPTION | $15,487.00 |
| MINIMUM PREMIUM | $15,487.00 |

## READ YOUR POLICY CAREFULLY

# *Marine Underwriters of America*

## PIERS AND WHARVES – DECLARATIONS

| INSURED AND MAILING ADDRESS<br>Marina Del Rey, LLC<br>7007 Marina Drive<br>Kingston, OK 73439 | POLICY NUMBER<br><br>726OM5504-00 |
|---|---|

**LOCATION(S):** Underwriters shall be liable in respect to covered property only at the following location(s):

| 1. | 7007 Marina Drive, Kingston, OK 73439 |
|---|---|
| | |

**DESCRIPTION/LIMITS OF INSURANCE**

| Location Number | Description | Limits of Insurance |
|---|---|---|
| Location 1 | 1985, Steel, Floating, Covered, 25 Slips | $375,000 |
| Location 1 | 1981, Steel, Floating, Covered, 7 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, Covered, 6 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, covered, 10 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, Covered, 7 Slips | $ 75,000 |
| Location 1 | 1981, Steel, Floating, Covered | $ 75,000 |
| Location 1 | 2012, Steel, Floating, Covered, 13 Slips | $400,000 |
| Location 1 | 2010, Steel, Floating, Covered, 10 Slips | $350,000 |
| Location 1 | 2011, Steel, Floating, Covered, 16 Slips | $350,000 |
| Location 1 | 2011, Steel, Floating, Covered, 11 Slips | $200,000 |
| Location 1 | 2016, Steel, Floating, Covered, 4 Slips | $100,000 |
| Location 1 | 2016, Steel, Floating, Covered, | $175,000 |
| Location 1 | 2016, Steel, Floating, Covered, | $420,000 |
| Location 1 | 2017, Steel, Floating, Covered, 28 Slips | $675,000 |
| Location 1 | 2017, Steel, Floating, Covered, 16 Slips | $650,000 |
| Location 1 | 2018, Steel, Floating, Covered, 6 Slips | $ 75,000 |
| Location 1 | Contents | $ 50,000 |
| | | |
| Location 1 | BII | $720,000 |

| DEDUCTIBLE: | VALUATION/COINSURANCE: |
|---|---|
| $50,000 except<br>$300,000 wind, flood, wave action,<br>collision from wind, flood, and wave action<br>BII:  14 days | RCV / 90% 15 years and newer<br>ACV / 80% all others |

**RATES/PREMIUM:**

| PIERS AND WHARVES | RATE PER $100 |
|---|---|
| | Flat |
| | |
| **TOTAL PREMIUM DUE AND PAYABLE AT INCEPTION** | $245,750.00 |
| **MINIMUM PREMIUM** | $245,750.00 |
| | |

## READ YOUR POLICY CAREFULLY

# Marine Underwriters of America

## CONTRACTORS EQUIPMENT POLICY - DECLARATIONS

| INSURED AND MAILING ADDRESS | POLICY NUMBER |
|---|---|
| Marina Del Rey, LLC<br>7007 Marina Drive<br>Kingston, OK 73439 | 726OM5504-00 |

**SCHEDULED EQUPMENT:**

| | | |
|---|---|---|
| 1. | $11,218 | 2020 EZLOADER BOAT TRAILER - 1L8TCEXM7LA |
| 2. | $7,157 | 2021 BOATMATE TRAILER - 5A7BB2324MT00462 |
| 3. | $3,270 | 2020 B&M TRAILER - 19BEM1625LCA20091 |
| 4. | $1,730 | 2021 HAUL-RITE TRAILER - 19BEM1622MCA212 |
| 5. | $3,534 | 2021 EZTRAC TRAILER - 59WBB3025MM000257 |
| 6. | $3,389 | 2021 HAUL-RITE TRAILER - 19BEM1627MCA212 |
| 7. | $4,120 | 2021 HAUL-RITE TRAILER - 19BEP1624MCB210 |
| 8. | $1,864 | 2021 EZTRAC TRAILER - 59WBB2624MM000641 |

| DEDUCTIBLE: | VALUATION/COINSURANCE: |
|---|---|
| $1,000 | ACV / 80% |

**RATES/PREMIUM:**

| | |
|---|---|
| Scheduled Equipment Rates: | 1% |
| | |
| | |
| | |
| TOTAL PREMIUM DUE AND PAYABLE AT INCEPTION | $363.00 |
| MINIMUM PREMIUM | $363.00 |

## READ YOUR POLICY CAREFULLY

MUA 0011 1109

# MARINE GENERAL LIABILITY
## Including Marina Operator's Legal Liability

### TABLE OF CONTENTS

SECTION I - MARINE OPERATIONS

SECTION II - GENERAL LIABILITY

SECTION III - PERSONAL AND ADVERTISING INJURY

SECTION IV - MEDICAL EXPENSES

SECTION V - SUPPLEMENTARY PAYMENTS

SECTION VI - WHO IS AN INSURED

SECTION VII - LIMITS OF INSURANCE

SECTION VIII - CONDITIONS

SECTION IX - DEFINITIONS

ENDORSEMENTS

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

The word Insured means any person or organization qualifying as such under Section VI - Who is an Insured.  Other words and phrases that appear in bold have special meaning.  Refer to Section IX – Definitions.

MUA 1001 0221

## SECTION I - MARINE OPERATIONS

1.   Insuring Agreement

    A.   Marina Operator's Legal Liability

        1)   Marina Operator's Legal Liability – **Property Damage**

The Company will pay those sums that the Insured becomes legally obligated to pay as damages resulting from the Insured's operations as a Marina Operator because of **Property Damage** to watercraft of others, including equipment, cargo, or other interests on board the watercraft, while said items are in the care, custody, and control of the insured for the purpose of:

    a)   Repair, alteration, maintenance or miscellaneous servicing;
    b)   Storage;
    c)   Mooring at slips, spaces or buoys;
    d)   Hauling out or launching; or
    e)   Fueling.

        2)   Marina Operator's Legal Liability – **Property Damage** Extension

The Company will pay those sums that the Insured becomes legally obligated to pay as damages because of **Property Damage** to the property of others other than that described in 1.A.1) above arising out of the marina operations described in 1.A.1) above.

        3)   Marina Operator's Legal Liability – **Bodily Injury**

The Company will pay those sums that the Insured becomes legally obligated to pay as damages because of **Bodily Injury** arising out of the marina operations described in 1.A.1) above.

        4)   Marina Operator's Protection and Indemnity

The Company will pay those sums that the Insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** resulting from the operation of watercraft described in 1.A.1) above by the Insured or the Insured's employees in connection with the Insured's operations as a Marina Operator.

        5)   Removal of Wreck

The Company will pay the cost or expense of, or incidental to, the removal of wreck of watercraft described in 1.A.1) above, in connection with the Insured's operations as a Marina Operator, when such removal is compulsory by law.  It is agreed that such cost or expense shall be reduced by the net proceeds of salvage that may inure to the benefit of the Insured.

    B.   The Company will have the right and duty to defend the insured against any **Suit** seeking those damages.  The Company may, at their discretion, investigate any **Occurrence** and settle any claim or **Suit** that may result.  But,

        1)   The amount the Company will pay for damages is limited as described in the Limits of Insurance Section; and

2)   The Company will not be obligated to pay any damages or to defend any claim or **Suit** after the applicable Limit of Insurance has been exhausted by payment of judgments, settlements, or related expenses; and

3)   The Company will have no duty to defend the insured against any claim or **Suit** seeking damages to which this insurance does not apply.

C.   This insurance applies to **Bodily Injury** and **Property Damage** only if:

1)   The **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place at the location(s) scheduled in the Declarations page(s), whenever any persons employed by or on behalf of the Insured, in their capacity as ship repairers, are on-board watercraft in any port, or place, for the purpose of effecting repairs within one hundred miles of the location scheduled in the Declarations page(s), or while watercraft being moved by land or water within one-hundred (100) miles of the location scheduled in the Declarations page(s).

2)   The **Bodily Injury** or **Property Damage** occurs during the policy period.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section V - Supplementary Payments.

2.   Exclusions

This insurance does not apply to:

A.   **Bodily Injury** or **Property Damage** excluded in Section II – General Liability, 2. Exclusions;

B.   Collision liability, tower's liability or liabilities insured against under the customary forms of hull or protection and indemnity policies arising out of the operation of any watercraft owned by, leased or chartered to, the insured or any affiliated or subsidiary concern or party;

C.   Loss, damage or expense arising in connection with work on any watercraft which has carried flammable or combustible liquid in bulk as fuel or cargo or any watercraft which has carried flammable compressed gas in bulk, unless such work is done in accordance with the requirements of the rules and regulations of the National Fire Protection Association applicable to such work;

D.   Loss or damage caused by or resulting from exceeding the registered or rated lifting capacity of any lifting device, marine railway or dry-dock;

E.   The expense of redoing the work improperly performed by or on behalf of the Insured or the cost of replacement of materials, parts or equipment furnished in connection therewith;

F.   The cost or expense of repairing, replacing or renewing any faulty designed part or parts which cause(s) loss of or damage to the watercraft, or for any expenditure incurred by reason of a betterment or alteration in design; or

G.   Floating homes and other structures that are not 'vessels' for the purposes of 1. United States Code § 3. and are not subject to federal maritime jurisdiction.

## SECTION II - GENERAL LIABILITY

1.   Insuring Agreement

   A.   The Company will pay those sums that the insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies.

   B.   The Company will have the right and duty to defend the insured against any **Suit** seeking those damages.  The Company may, at their discretion, investigate any **Occurrence** and settle any claim or **Suit** that may result.  But,

      1)   The amount the Company will pay for damages is limited as described in the Limits of Insurance Section; and

      2)   The Company will not be obligated to pay any damages or to defend any claim or **Suit** after the applicable Limit of Insurance has been exhausted by payment of judgments, settlements, or related expenses; and

      3)   The Company will have no duty to defend the insured against any claim or **Suit** seeking damages to which this insurance does not apply.

   C.   This insurance applies to **Bodily Injury** and **Property Damage** only if:

      1)   The **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory**; and

      2)   The **Bodily Injury** or **Property Damage** occurs during the policy period.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section V - Supplementary Payments.

2.   Exclusions

   This insurance does not apply to:

   A.   Watercraft

      **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment of others of any watercraft owned or operated by or rented or loaned to any insured.  Use includes **Loading or Unloading**.

      *This exclusion does not apply to:*

      1)   A watercraft while ashore on premises owned or rented by the Named Insured; and

      2)   *An operation that is covered under Section I - Marine Operations.*

   B.   Damage to Property

      **Property Damage** to:

      1)   Property owned by, rented to, or occupied by the Named Insured;

2)      Premises sold, given away, or abandoned by the Named Insured, if the **Property Damage** arises out of any part of those premises;

3)      Property loaned to the Named Insured;

4)      Personal property in the care, custody or control of the insured;

5)      That particular part of real property on which the Named Insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured are performing operations, if the **Property Damage** arises out of those operations; or

6)      That particular part of any property that must be restored, repaired or replaced because the **Named Insured's Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are the **Named Insured's Work** and were never occupied, rented or held for rental by the Named Insured;

Paragraph 3., 4., 5., and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement;

Paragraph 6. of this exclusion does not apply to **Property Damage** included in the definition of **Products-Completed Operations Hazard**;

*Paragraph 4. of this exclusion does not apply to an operation that is covered under Section I - Marine Operations*

C.    Expected or Intended Injury

**Bodily Injury** or **Property Damage** expected or intended from the standpoint of the insured.  This exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

D.    Contractual Liability

**Bodily Injury** or **Property Damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1)      That the insured would have in the absence of the contract or agreement; or

2)      Assumed in a contract or agreement that is an **Insured Contract**, provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an **Insured Contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of **Bodily Injury** or **Property Damage**, provided:

a)      Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **Insured Contract**; and

      b)     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

E.    Liquor Liability

**Bodily Injury** or **Property Damage** for which any insured may be held liable by reason of:

1)    Causing or contributing to the intoxication of any person; or

2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the Named Insured is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

The Company has neither a duty to defend nor a duty to indemnify an insured if any proximate or contributing cause of an occurrence arises out of **Bodily Injury** or **Property Damage** above.  This exclusion applies to all insureds regardless of whether the Insured is in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.  There is no duty to defend any aspect of the claim or **Suit** and this insurance does not apply.

F.    Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

This exclusion also applies to the United States Longshore and Harbor Workers' Compensation Act, the Death on the High Seas Act, the Jones Act, and any other damages owed to a person under General Maritime Law.

G.    Employer's Liability

**Bodily Injury** to:

1)    An **Employee** of the insured arising out of and in the course of:

      a)     Employment by the insured; or

      b)     Performing duties related to the conduct of the insured's business; or

2)    The spouse, child, parent, brother or sister of that **Employee** as a consequence of 1. above.

This exclusion applies:

1)    Whether the insured may be liable as an employer or in any other capacity; and

2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

H.    Pollution

1)    **Bodily Injury** or **Property Damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

i)    **Bodily Injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

ii)    **Bodily Injury** or **Property Damage** for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

iii)    **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**;

b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

i)    Any insured; or

ii)    Any person or organization for whom you may be legally responsible; or

d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

i)    **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

        ii)      **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

        iii)     **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

   e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**.

  2)   Any loss, cost or expense arising out of any:

   (a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**; or

   (b)   Claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**.

However, this paragraph does not apply to liability for damages because of Property Damage that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **Suit** by or on behalf of a governmental authority.

I.    Sub-Surface Operations or Property

  1)   Loss of, damage to, or loss of use of property directly or indirectly resulting from sub-surface operations of the insured;

  2)   Removal of, loss of or damage to sub-surface oil, gas or any other substance;

J.    Aircraft or **Auto**

**Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment of others of any aircraft or **Auto** owned or operated by or rented or loaned to any insured. Use includes operation and **Loading or Unloading**.

This exclusion does not apply to:

  1)   Parking an **Auto** on, or on the ways next to, premises owned by, or rented, or loaned to the Named Insured, provided the **Auto** is not owned by or rented or loaned to any insured.

  2)   Liability assumed under any **Insured Contract** for the ownership, maintenance or use of aircraft; or

3)    **Bodily Injury** or **Property Damage** arising out of the operation of any of the equipment listed in Paragraph F.2) or F.3) of the definition of **Mobile Equipment**.

K.    **Mobile Equipment**

**Bodily Injury** or **Property Damage** arising out of

1)    The transportation of **Mobile Equipment** by an **Auto** owned or operated by or rented or loaned to any insured; or

2)    The use of **Mobile Equipment** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

L.    War, Hostilities, and Weapon Testing

**Bodily Injury** or **Property Damage,** however caused, arising, directly or indirectly, out of:

1)    Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether or not the Insured's liability therefore is based on negligence; or

2)    Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter, or by any mine, bomb or torpedo; or

3)    Hostilities or warlike operations (whether there be a declaration of war or not), but the phrase "hostilities or warlike operations (whether there be a declaration of war or not)" shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object, stranding, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; for the purposes of the foregoing, power includes any authority maintaining navy, military or air forces in association with a power. In addition to the foregoing exclusions, this insurance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not the Insured's liability therefore is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage and disembarkation of troops, combatants, or material of war, or the placement of the watercraft in jeopardy as an act or measure of war taken in the actual process of a military engagement, with or without the consent of the Insured, shall be considered a warlike for the purposes of this policy; or

4)    The consequences of civil war, revolution rebellion, insurrection, military or usurped power, the imposition of marital law, or civil strife arising therefrom, or piracy, or from any loss, damage or expense caused by or resulting directly or indirectly from the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political or terrorist purposes, and whether any loss, damage or expense resulting therefrom is accidental or intentional; or

5)      Strikes, lockouts, political or labor disturbances, civil commotion, riots, or the acts of any person or persons taking part in such **Occurrence** or disorder; or

6)      The firing or testing of any weapon of war.

M.      Damage to the **Named Insured's Product**

**Property Damage** to the **Named Insured's Product** arising out of such products or any part of such products.

N.      Damage to the **Named Insured's Work**

**Property Damage** to the **Named Insured's work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on behalf on the Named Insured by a subcontractor.

O.      Damage to **Impaired Property** or Property Not Physically Injured

**Property Damage** to **Impaired Property** or property that has not been physically injured arising out of:

1)      A defect, deficiency, inadequacy or dangerous condition in the **Named Insured's Product** or the **Named Insured's Work**; or

2)      A delay or failure by the Named Insured or anyone acting on behalf of the Named Insured to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to the **Named Insured's Product** or the **Named Insured's Work** after it has been put to its intended use.

P.      Recall of Products, Work or **Impaired Property**

Damages claimed for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1)      The **Named Insured's Product**;

2)      The **Named Insured's Work**; or

3)      **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Q.    Asbestos

**Bodily Injury** or **Property Damage** arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

1)    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

2)    Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

R.    Employment-Related Practices

**Bodily Injury** to:

1)    A person arising out of any:

a)    Refusal to employ;

b)    Termination of employment; or

c)    Employment-related practices, policies, acts or omissions including, but not limited to, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2)    The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** to that person due to any of the employment-related practices described in paragraphs a., b., or c. above.

This exclusion applies:

1)    Whether the insured may be held liable as an employer or in any other capacity; and

2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

S.    Errors and Omissions

Any damage, including but not limited to **Bodily Injury** or **Property Damage** that results from or arises out of negligence, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of the Insured in the conduct of any of the Insured's business activities. Professional services includes but is not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or Declarations and supervisory, inspection, engineering, or data processing services.

T.    Directors and Officers

1)    Actual or alleged liability arising out of an insured's capacity, duty or responsibility as an Officer, Director or Trustee of a corporation by reason of any breach of fiduciary duty, or improper conduct or conflict of interest in the performance of an Insured's duties, responsibilities or accountability as an Officer, Director or Trustee,  This includes, but is not limited to, any actual or alleged misstatement, misleading statement, gain of personal profit or advantage to which the insured was or is not entitled legally, any dishonest act, or bad faith conduct, in the insured's capacity as an Officer, Director or Trustee, or with respect to the capital or assets of the corporation, or any action taken beyond the scope of the Insured's authority as an Officer, Director or Trustee;

2)    Actual or alleged liability arising out of a violation(s) of any federal or state law regulating, controlling or governing stock, bonds, or securities of any type or nature.  This includes, but is not limited to, the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Public Utility Holding Company Act of 1935, the Investment Company Act of 1940, the Investment Advisers Act of 1940, and the so called "Blue Sky" Laws of various State and other jurisdictions;

3)    Actual or alleged liability arising out of any federal or state law regulating, controlling and governing antitrust or the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce.  This includes, but is not limited to, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott Rodino Antitrust Improvements Act;

4)    Actual or alleged liability of any Officer, Director or Trustee arising out of or asserted in a shareholder's derivative action;

5)    Actual or alleged liability arising out of the dishonesty or infidelity of any insured;

U.    **Personal Injury** or **Advertising Injury**

**Bodily Injury** arising out of **Personal Injury** or **Advertising Injury**.

V.    Nuclear Energy Liability (Broad Form)

1).    Any Liability Coverage, to **Bodily Injury** or **Property Damage**:

a)    with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b)    resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had

this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2)  Any Medical Expenses Coverage, to expenses incurred with respect to **Bodily Injury** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3)  Any Liability Coverage, to **Bodily Injury** or **Property Damage** resulting from hazardous properties of nuclear material, if:

a)  the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

c)  the **Bodily Injury** or **Property Damage** arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion 3. applies only to **Property Damage** to such nuclear facility and any property thereat.

As used in this exclusion V.:

Hazardous properties includes radioactive, toxic or explosive properties;

Nuclear material, means source material, special nuclear material or by-product material;

Source material, special nuclear material and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

Waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility.

Nuclear facility means:

1.  any nuclear reactor;

2.  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

3.      any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.      any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Property Damage** includes all forms of radioactive contamination of property.

Exclusions A., B., and E. through U. do not apply to damage by fire to premises while rented to the **Named Insured** or temporarily occupied by the **Named Insured** with permission of the owner. A separate limit of insurance applies to this coverage as described in the Limits of Insurance Section.

W.      Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

X.      Distribution Of Material In Violation Of Statutes

**Bodily Injury** or **Property Damage** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)      The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)      The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3)      Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## <u>SECTION III - PERSONAL AND ADVERTISING INJURY</u>

1.    Insuring Agreement

    A.    The Company will pay those sums that the insured becomes legally obligated to pay as damages because of **Personal Injury** and **Advertising Injury** to which this insurance applies.

    B.    The Company will have the right and duty to defend the insured against any **Suit** seeking those damages.  The Company may, at their discretion, investigate any **Occurrence** and settle any claim or **Suit** that may result.  But,

        1)    The amount the Company will pay for damages is limited as described in the Limits of Insurance Section; and

        2)    The Company will not be obligated to pay any damages or to defend any claim or **Suit** after the applicable Limit of Insurance has been exhausted by payment of judgments, settlements, or related expenses; and

        3)    The Company will have no duty to defend the insured against any **Suit** seeking damages to which this insurance does not apply.

    C.    This insurance applies to **Personal Injury** and **Advertising Injury** caused by an offense arising out of the business of the Named Insured, but only if the offense was committed in the **Coverage Territory** during the policy period

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section V - Supplementary Payments.

2.    Exclusions

This insurance does not apply to:

    A.    Knowing Violation Of Rights Of Another

    **Personal Injury** and **Advertising Injury** caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** and **Advertising Injury**.

    B.    Material Published With Knowledge Of Falsity

    **Personal Injury** and **Advertising Injury** arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    C.    Material Published Prior To Policy Period

    **Personal Injury** and **Advertising Injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

    D.    Criminal Acts

    **Personal Injury** and **Advertising Injury** arising out of a criminal act committed by or at the direction of the insured.

    E.    Contractual Liability

    **Personal Injury** and **Advertising Injury** for which the insured has assumed

    liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

F.    Breach Of Contract

**Personal Injury** and **Advertising Injury** arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

G.    Quality Or performance Of Goods – Failure To Conform To Statements

**Personal Injury** and **Advertising Injury** arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

H.    Wrong Description Of Prices

**Personal Injury** and **Advertising Injury** arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

I.    Infringement Of Copyright, Patent, Trademark Or Trade Secret

**Personal Injury** and **Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade name, trade dress, trade secret or other intellectual property rights.

J.    Insureds In Media And Internet Type Business

**Personal Injury** and **Advertising Injury** committed by an insured whose business is:

1)    Advertising, broadcasting, publishing or telecasting;

2)    Designing or determining content of web-sites for others; or

3)    An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 16. A, B. and C. of **Personal Injury** and **Advertising Injury** under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

K.    Electronic Chatrooms Or Bulletin Boards

**Personal Injury** and **Advertising Injury** arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

L.    Unauthorized Use Of Another's Name Or Product

**Personal Injury** and **Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

M.    Pollution

**Personal Injury** and **Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time.

N.  Pollution Related

Any loss, cost or expense arising out of any:

1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**; or

2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**.

O.  War

**Personal Injury** and **Advertising Injury**, however caused, arising, directly or indirectly, out of:

1) War, including undeclared or civil war;

2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## SECTION IV - MEDICAL EXPENSES

1. Insuring Agreement

    A. The Company will pay medical expenses as described below for **Bodily Injury** caused by an accident:

        1) On premises the Named Insured owns or rents;

        2) On ways next to premises the Named Insured owns or rents; or

        3) Because of the Named Insured's operations; provided that:

            a) The accident takes place in the **Coverage Territory** and during the policy period;

            b) The expenses are incurred and reported to the Company within one year of the date of the accident; and

            c) The injured person submits to examination, at the Company's expense, by physicians of the Company's choice as often as the Company reasonably requires.

    B. The Company will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. The Company will pay reasonable expenses for:

        1) First aid administered at the time of an accident;

        2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions

The Company will not pay expenses for **Bodily Injury**:

    A. To any insured.

    B. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

    C. To a person injured on that part of premises the Named Insured owns or rents that the person normally occupies.

    D. To a person, whether or not an **Employee** of any insured, if benefits for the **Bodily Injury** are payable or must be provided under a workers compensation or disability benefits law or a similar law.

    E. To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

    F. Included within the **Products-Completed Operations Hazard**.

    G. Excluded under Section I or Section II.

## SECTION V - SUPPLEMENTARY PAYMENTS

1.  The Company will pay with respect to any claim or **suit** it defends:

    A.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **Bodily Injury** Liability Coverage applies.  The Company does not have to furnish these bonds.

    B.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  The Company does not have to furnish these bonds.

    C.  All reasonable expenses incurred by the insured at the request of the Company to assist the company in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $250 a day because of time off from work.

    These payments will not reduce the limits of insurance.

## SECTION VI - WHO IS AN INSURED

1.   If the Named Insured is designated in the Declarations page(s) as:

A.   An individual, the person and their spouse are insureds, but only with respect to the conduct of a business of which the Named Insured is the sole owner.

B.   A partnership or joint venture, the partnership or joint venture is an insured. The members, the partners, and their spouses are also insureds, but only with respect to the conduct of the business of the Named Insured.

C.   A limited liability company, the limited liability company is an insured.  The members are also insureds, but only with respect to the conduct of the business of the Named Insured.  The managers are insureds, but only with respect to their duties as the managers of the Named Insured.

D.   An organization other than a partnership or joint venture, the organization is an insured. The **Executive Officers** and directors are insureds, but only with respect to their duties as the officers or directors of the Named Insured. The stockholders are also insureds, but only with respect to their liability as stockholders.

E.   A trust is an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

2.   Each of the following is also an insured:

A.   **Employees** of the Named Insured, other than either **Executive Officers** of the Named Insured (if the Named Insured is an organization other than a partnership, joint venture or limited liability company) or managers of the Named Insured (if the Named Insured is a limited liability company), but only for acts within the scope of their employment by the Named Insured or while performing duties related to the conduct of business of the Named Insured. However, none of these **Employees** is an insured for:

1)   **Bodily Injury, Personal Injury and Advertising Injury**:

a)   To the Named Insured, to partners or members (if the Named Insured is a partnership or joint venture) of the Named Insured, or to a co-**Employee** while in the course of his or her employment or while performing duties related to the conduct of business of the Named Insured;

b)   To the spouse, child, parent, brother or sister of that co-**Employee** as a consequence of paragraph 1.a. above;

c)   For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 1.a. or b. above; or

d)   Arising out of his or her providing or failing to provide professional health care services.

2)   **Property Damage** to property:

a)   Owned, occupied or used by,

          b)       Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

the Named Insured, any of the **Employees** of the Named Insured, any partner or member (if the Named Insured is a partnership or joint venture), or any member (if the Named Insured is a limited liability company).

  B.    Any person (other than an **Employee** of the Named Insured), or any organization while acting as a real estate manager for the Named Insured.

  C.    Any person or organization having proper temporary custody of the property of the Named Insured if Named Insured dies, but only:

     1)   With respect to liability arising out of the maintenance or use of that property; and

     2)   Until the legal representative of the Named Insured has been appointed.

  D.    The legal representative of the Named Insured if the Named Insured dies, but only with respect to duties as such. That representative will have all rights and duties of the Named Insured under this Coverage Part.

3.   With respect to **Mobile Equipment** registered in the name of the Named Insured under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with the permission of the Named Insured. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

  A.    **Bodily Injury** to a co-**Employee** of the person driving the equipment; or

  B.    **Property Damage** to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person who is an insured under this provision.

4.   Any organization the Named Insured newly acquires or forms, other than a partnership or joint venture, and over which the Named Insured maintains ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  A.    Coverage under this provision is afforded only until the 90th day after the Named Insured acquires or forms the organization or the end of the policy period, whichever is earlier;

  B.    Sections I and II do not apply to **Bodily Injury** or **Property Damage** that occurred before the Named Insured acquired or formed the organization; and

  C.    Section III does not apply to **Personal Injury** or **Advertising Injury** arising out of an offense committed before the Named Insured acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION VII - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations page(s) and the rules below fix the most the Company will pay, including amounts incurred for **defense costs**, regardless of the number of:

    A.   Insureds;

    B.   Claims made or **Suits** brought; or

    C.   Persons or organizations making claims or bringing **Suits**.

2.  The General Aggregate Limit is the most the Company will pay for the sum of:

    A.   Medical expenses under Section IV;

    B.   Damages under Sections I, II, and III, except damages because of **Bodily Injury** or **Property Damage** included in the **Products-Completed Operations Hazard**.

3.  The Products-Completed Operations Aggregate Limit is the most the Company will pay under Sections I or II for damages because of **Bodily Injury** and **Property Damage** included in the **Products-Completed Operations Hazard**.

4.  Subject to 2. above, the Personal and **Advertising Injury** Limit is the most the Company will pay under Section III for the sum of all damages because of all **Personal Injury** and all **Advertising Injury** sustained by any one person or organization.

5.  Subject to 2. or 3. above, whichever applies, the Each **Occurrence** Limit is the most the Company will pay for the sum of:

    A.   Damages under Section II; and

    B.   Medical expenses under Section IV

    because of all **Bodily Injury** and **Property Damage** arising out of any one **Occurrence**.

6.  Subject to 2. above the Marina Operations Legal Liability Limit is the most the Company will pay under Section I because of **Bodily Injury** or **Property Damage** except damages because of **Bodily Injury** or **Property Damage** included in the **Products-Completed Operations Hazard**.

7.  Subject to 5. above, the Fire Damage Limit is the most the Company will pay under Section II for damages because of **Property Damage** to premises, while rented to the Named Insured or temporarily occupied by the Named Insured with permission of the owner, arising out of any one fire.

8.  Subject to 5. above, the Medical Expense Limit is the most the Company will pay under Section IV for all medical expenses because of **Bodily Injury** sustained by any one person.

The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations page(s), unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION VIII - CONDITIONS

1.  Premium

    A.  The Deposit premium shown in the Declarations page(s) shall be payable upon the inception date of this Policy.

    B.  The Named Insured, by acceptance of this Policy, agrees to keep an accurate record of all Gross Charges for operations covered under the terms and conditions of this Policy. All such records shall be available for examination by representatives of the Company at all times during business hours during the term of this policy, or thereafter. The Named Insured further agrees to report to the Company, not later than thirty (30) days following policy expiration, the total Gross Charges thereof, collected and uncollected, during the policy period shown in the Declarations page(s).

    C.  The earned premium will be computed at the rate(s) shown in the Declarations page(s) and applied against the Deposit Premium. Any earned premium exceeding the Deposit Premium shall be due and payable to the Company at the time of filing the report on which the earned premium is due. Any unearned premium, being the amount by which the Deposit Premium exceeds the earned premium, shall be refunded at the time of filing the report, however subject to the Minimum Premium described in 1.D. below.

    D.  The Minimum Premium shown in the Declarations page(s) is the minimum premium retained by the Company except in the event of cancellation of this policy by the Company.

2.  Deductible

    No claim shall be payable hereunder unless the aggregate liability for any one **Occurrence**, including claims, costs and expense exceeds the amount shown in the Declarations page(s). This amount shall be deducted from the amount payable hereunder for each **Occurrence**. The deductible does not apply to Section IV - Medical Expenses.

3.  Cancellation

    A.  This policy may be cancelled by the Named Insured by mailing to the Company written notice stating when thereafter the cancellation shall be effective.

    B.  This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in the Declarations page(s), written notice stating when not less than thirty (30) days thereafter such cancellation shall be effective; provided that in the event of nonpayment of premium, such notice shall state when not less than ten (10) days thereafter such cancellation shall be effective. Such notice sent to the Named Insured in care of the agent or broker who negotiated this policy shall have the same effect as if sent directly to the Named Insured.

    C.  The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

D.  If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure.  If the Company cancels, earned premium shall be computed pro rata.  Premium adjustment may be made either at the time cancellation is effected, or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4.  Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve the Company of it's obligations.

5.  Duties In The Event Of **Occurrence**, Offense, Claim Or **Suit**

A.  The Named Insured must see to it that the Company is notified as soon as practicable of an **Occurrence** or an offense which may result in a claim. To the extent possible, notice should include:

1)  How, when and where the **Occurrence** or offense took place;

2)  The names and addresses of any injured persons and witnesses; and

3)  The nature and location of any injury or damage arising out of the **Occurrence** or offense.

B.  If a claim is made or **Suit** is brought against any insured, the Named Insured must:

1)  Immediately record the specifics of the claim or **Suit** and the date received; and

2)  Notify the Company as soon as practicable.

The Named Insured must see to it that the Company receives written notice of the claim or **Suit** as soon as practicable.

C.  The Named Insured and any other involved insured must:

1)  Immediately send the Company copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

2)  Authorize the Company to obtain records and other information;

3)  Cooperate with the Company in the investigation, settlement or defense of the claim or **Suit**; and

4)  Assist the Company, upon the request of the Company, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

D.  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without the consent of the Company.

6.     Legal Action Against The Company

No person or organization has a right:

A.     To join the Company as a party or otherwise bring the Company into a **Suit** asking for damages from an insured; or

B.     To sue the Company unless all of its terms have been fully complied with.

A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but the Company will not be liable for damages that are not payable under the terms or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the insured and the claimant or the claimant's legal representative.

7.     Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Sections I, II, or III, our obligations are limited as follows:

A.     This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

B.     When this insurance is excess, we will have no duty under Sections I, II, or III to defend the insured against any **Suit** if any other insurer has a duty to defend the insured against that **Suit.** If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

C.     When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

1)     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

2)     The total of all deductible and self insured amounts under all that other insurance.

8.     Representations

By accepting this policy, the Named Insured agrees:

A.     The statements in the Declarations page(s) are accurate and complete;

B.     Those statements are based upon representations the Named Insured made to the Company; and

C.     The Company has issued this policy in reliance upon the representations of the Named Insured.

9.    Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

A.    As if each Named Insured were the only Named Insured; and

B.    Separately to each insured against whom claim is made or **Suit** is brought.

10.    Transfer Of Rights Of Recovery Against Others To The Company.

If the insured has rights to recover all or part of any payment the Company has made, those rights are transferred to the Company. The insured must do nothing after loss to impair them. At the request of the Company, the insured will bring **Suit** or transfer those rights to the Company and help the Company enforce them.

## SECTION IX - DEFINITIONS

1. **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

   A.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   B.    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an **Advertisement**.

2. **Auto** means:

   A.    A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or.

   B.    Any other land vehicle that is subject to a compulsory or financial responsibility or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, **Auto** does not include **Mobile Equipment**.

3. **Bodily Injury** means **Bodily Injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **Coverage Territory** means all parts of the world, provided **Suit** is first brought in The United States of America (including its territories and possessions), Puerto Rico or Canada.

5. **Defense costs** means reasonable and necessary fees, costs and expenses consented to by The Company arising out of the investigation, adjustment, defense and appeal of a **claim** or **suit** against an insured.

6. **Employee** includes a **Leased Worker**.  **Employee** does not include a **Temporary Worker**.

7. **Executive Officer** means a person holding any of the officer positions created by the Named Insured's charter, constitution, by-laws or any other similar governing document.

7. **Hostile Fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

9. **Impaired Property** means tangible property, other than the **Named Insured's Product** or the **Named Insured's Work**, that cannot be used or is less useful because:

   A.    It incorporates the **Named Insured's Product** or the **Named Insured's Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   B.    The Named Insured has failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   A.    The repair, replacement, adjustment or removal of the **Named Insured's Product** or the **Named Insured's Work**; or

   B.    The Named Insured fulfilling the terms of the contract or agreement.

10.    **Insured Contract** means:

    A.    A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Named Insured or temporarily occupied by the Named Insured with permission of the owner is not an **Insured Contract**;

    B.    A sidetrack agreement;

    C.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    D.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    E.    An elevator maintenance agreement;

    F.    That part of any other contract or agreement pertaining to the business of the Named Insured (including an indemnification of a municipality in connection with work performed for a municipality) under which the Named Insured assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

        Paragraph f. does not include that part of any contract or agreement:

        1)    That indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

        2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

            a)    Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or Declarations; or

            b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

        3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 2. above and supervisory, inspection or engineering services.

        4)    That indemnifies another for the sole negligence of such other person or organization.

11.    **Leased Worker** means a person leased to the Named Insured by a labor leasing firm under an agreement between the Named Insured and the labor leasing firm, to perform duties related to the conduct of the business of the Named Insured.  **Leased Worker** does not include a **Temporary Worker**.

12. **Loading or Unloading** means the handling of property:

    A.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **Auto**;

    B.    While it is in or on an aircraft, watercraft or **Auto**; or

    C.    While it is being moved from an aircraft, watercraft or **Auto** to the place where it is finally delivered;

        but **Loading or Unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **Auto**.

13. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    A.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    B.    Vehicles maintained for use solely on or next to premises owned or rented by the Named Insured;

    C.    Vehicles that travel on crawler treads;

    D.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        1)    Power cranes, shovels, loaders, diggers or drills; or

        2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

    E.    Vehicles not described in A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        2)    Cherry pickers and similar devices used to raise or lower workers;

    F.    Vehicles not described in A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo.

        However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Autos**:

        1)    Equipment designed primarily for:

            a)    Snow removal;

            b)    Road maintenance but not construction or surfacing; or

            c)    Street cleaning;

    2)    Cherry pickers and similar devices mounted on Automobile or truck chassis and used to raise or lower workers; and

    3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **Autos.**

14.    **Named Insured's Product** means:

A.    Any goods or products, other than real property manufactured, sold, handled, distributed or disposed of by:

    1)    The Named Insured;

    2)    Others trading under the Named Insured's name; or

    3)    A person or organization whose business or assets the Named Insured has acquired; and

B.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Named Insured's Product** includes:

A.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the **Named Insured's Product**; and

B.    The providing of or failure to provide warnings or instructions.

**Named Insured's Product** does not include vending machines or other property rented to or located for the use of others but not sold.

15.    **Named Insured's Work** means:

A.    Work or operations performed by the Named Insured or on behalf of the Named Insured; and

B.    Materials, parts or equipment furnished in connection with such work or operations.

**Named Insured's Work** includes:

A.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the **Named Insured's Work**; and

B.    The providing of or failure to provide warnings or instructions.

16.    **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.    **Personal Injury** and **Advertising Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

    A.    False arrest, detention or imprisonment;

    B.    Malicious prosecution;

    C.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    D.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

18.    **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, spoils, fumes, acids, alkalis, petroleum products or derivatives, chemicals, sewerage, dredging spoils, asbestos, and waste materials or substances; waste materials or substances includes materials to be recycled, reconditioned or reclaimed.

**19.**    **Products-Completed Operations Hazard**:

    A.    Includes all **Bodily Injury** and **Property Damage** occurring away from premises owned or rented by the Named Insured and arising out of the **Named Insured's Product** or the **Named Insured's Work** except:

        1)    Products that are still in the Named Insured's physical possession; or

        2)    Work that has not yet been completed or abandoned.  However, the **Named Insured's Work** will be deemed completed at the earliest of the following times:

            a)    When all of the work called for in the Named Insured's contract has been completed.

            b)    When all of the work to be done at the site has been completed if the Named Insured's contract calls for work at more than one site.

            c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            d)    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    B.    Does not include **Bodily Injury** or **Property Damage** arising out of:

        1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **Loading or Unloading** of it;

        2)    The existence of tools, uninstalled equipment or abandoned or unused materials; or

20.    **Property Damage** means:

    A.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    B.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, had or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

For the purposes of this insurance, **Property Damage** is not physical injury to tangible property, any resultant loss of use of tangible property, nor loss of use of tangible property that is not physically injured that arises out of failure to complete or abandonment of **Named Insured's Work**.

21.    **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** to which this insurance applies are alleged.  **Suit** includes:

    A.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with the consent of the Company; or

    B.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with the consent of the Company.

22.    **Temporary Worker** means a person who is furnished to the Named Insured to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

# AMERICAN INSTITUTE HULL CLAUSES COVERAGE FORM
## (June 2, 1977)

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy.  All captions are inserted only for purpose of reference and shall not be used to interpret the clauses to which they apply.

**ASSURED**
This Policy insures the Named Party shown on the DECLARATIONS hereinafter referred to as the Assured.

If claim is made under this Policy by anyone other than the owner of the Vessel, such person shall not be entitled to recover to a greater extent than would the owner, had claim been made by the owner as an Assured named in this policy.

Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid companies, or with respect to any loss, damage or expense against which such companies are insured.

**LOSS PAYEE**
Loss, if any, payable to Assured or order unless otherwise provided by endorsement.

Provided, however, Underwriters shall pay claims to others as set forth in the Collision Liability clause and may make direct payment to persons providing security for the release of the Vessel in Salvage cases.

**VESSEL**
The subject matter of this insurance is the Vessel(s) scheduled on the DECLARATIONS or by whatsoever name or names the said Vessel(s) shall be called, which for the purposes of this insurance shall consist of and be limited to her hull, launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation, motor generators and other electrical machinery.

In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed responsibility therefore, it shall also be considered part of the subject matter and the aggregate value thereof shall be included in the Agreed Value.

Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the subject matter of this insurance.

**DURATION OF RISK**
From the date shown on the DECLARATIONS

To the expiration date shown on the DECLARATIONS.
Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.

In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.

## AGREED VALUE

The vessel(s), for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at the amount listed for each vessel as stated on the DECLARATIONS.

## AMOUNT INSURED HEREUNDER

As listed for each vessel stated on the DECLARATIONS

## DEDUCTIBLE

Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue and labor clause and claims under the Collision Liability clause, arising out of each separate accident, the amount listed on the DECLARATIONS unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply. A recovery from other Interests, however, shall not operate to exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that sum. For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same accident shall be treated as due to that accident and (b) all heavy weather damage, or damage caused by contact with floating ice, which occurs during a single sea passage between two successive ports shall be treated as due to one accident.

## PREMIUM

The underwriters to be paid as listed on the DECLARATIONS, which premium shall be due on attachment. If the Vessel is insured under this Policy for a period of less than one year at the pro rata of the annual rate, full premium shall be considered earned and immediately due and payable in the event of Total Loss of the Vessel.

## RETURNS OF PREMIUM

Premium Returnable as follows:

 Pro rata daily net in the event of termination under the Change of Ownership clause;
 ~~Pro rata monthly net for each uncommenced month if mutually agreed to cancel this Policy;~~
 ~~For each period of 30 consecutive days the Vessel may be laid up in port for account of the Assured,~~
 ~~———— cents per cent, not under repair; or~~
 ~~———— cents per cent, net under repair;~~

provided always that:

 a) A Total Loss of the Vessel has not occurred during the currency of this Policy;

 b) ~~In no case shall a return for lay-up be allowed when the Vessel is lying in exposed or unprotected waters or in any location not approved by the Underwriters;~~

 c) In the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly;

 d) In no case shall a return be allowed when the Vessel is used as a storage ship or for lightering purposes;

~~If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such proportion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to the 30. Should the lay-up period exceed 30~~

~~consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable.~~

## NON-PAYMENT OF PREMIUM

In event of non-payment of premium 30 days after attachment or of any additional premium when due, this Policy may be canceled by the Underwriters upon 10 days written or telegraphic notice sent to the Assured at his last known address or in the care of the broker who negotiated this policy. Such proportion of the premium, however, as shall have been earned up to the time of cancellation shall be payable. In the event of Total Loss of the Vessel occurring prior to any cancellation or termination of this Policy full premium shall be considered earned.

## ADVENTURE

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades, with leave to sail or navigate with or without pilots, to go on trial trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except as is customary or when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor shall the Vessel, in the course of trading operations, engage in loading or discharging cargo at sea, from or onto another vessel other than a barge. lighter or similar craft used principally in harbors or inland waters. The phrase "engage in loading or discharging cargo at sea" shall include while approaching, leaving or alongside, or while another vessel is approaching, leaving or alongside the Vessel.

The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading or discharging cargo at sea, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

## PERILS

Touching the adventures and perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, fire, lightning, earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and Detainments of all Kings, Princes, Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, however, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon.

**ADDITIONAL PERILS (INCHMAREE)**

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following:

a) Accidents in loading, discharging or handling cargo, or in bunkering;
b) Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons;
c) Explosions on shipboard or elsewhere;
d) Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);
e) Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
f) Contact with aircraft, rockets or similar missiles, or with any land conveyance;
g) Negligence of charterers and/or repairers, provided such charterers and/or repairers are not an Assured hereunder;
h) Negligence of Masters, Officers, Crew or pilots;

Provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. Masters, Officers, Crew or pilots are not to be considered Owners within the meaning of this clause should the hold shares in the Vessel.

**DELIBERATE DAMAGE (Pollution Hazard)**

Subject to the terms and conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of government authorities has not resulted from want of due diligence by the Assured, the owners or managers of the Vessel or any of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

**CLAIMS (GENERAL PROVISIONS)**

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters, and:

a) where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire;
b) Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured for the actual additional expense of the voyage arising from compliance with the Underwriters' requirement);
c) Underwriters shall have the right of veto in connection with any repair firm proposed;
d) Underwriters may take tenders or may require in writing that tenders be taken for the repair of the Vessel, in which event, upon acceptance of a tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent per annum on the amount insured, for each day or pro rata for part of a day for time lost between issuance of invitations to tender and the acceptance of a tender, to the extent that such time is lost solely as a result of tenders having been taken and provided the tender is accepted without delay after receipt of the Underwriters' approval;

due credit shall be given against the allowances in (b) and (d) above for any amount recovered:

a) in respect of fuel, stores, and wages and maintenance of the Master, Officers or Crew allowed in General or Particular Average;

b) from third parties in respect of damages for detention and/or loss of profit and/or running expenses;

for the period covered by the allowances or any part thereof.

No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers or Crew, except when incurred solely for the necessary removal of the Vessel from one port to another for Average repairs or for trial trips to test Average repairs, in which cases wages and maintenance will be allowed only while the Vessel is under way.   This exclusion shall not apply to overtime or similar extraordinary payments to the Master, Officers or Crew incurred in shifting the Vessel for tank cleaning or repairs or while specifically engaged in these activities, either in port or at sea.

General and Particular Average shall be payable without deduction, new for old.

The expense of sighting the bottom after stranding shall be paid if reasonably incurred especially for that purpose, even if no damage be found.

No claim shall in any case be allowed in respect of scraping or painting the vessel's bottom.
In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel for which the Assured has assumed responsibility, claim shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less.

No claim for unrepaired damages shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period of the Policy and left unrepaired at the expiration of the Policy shall be demonstrated by the Assured to have diminished the actual market value of the Vessel on that date if undamaged by such perils.

**GENERAL AVERAGE AND SALVAGE**
General average and salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of affreightment, payable at the Assured's election either in accordance with the York-Antwerp Rules, 1950 or 1974 or with the laws and usages of the Port of New York. Provided always that when an adjustment according to the laws and usages of the port of destination is properly demanded by the owners of the cargo, General Average shall be paid accordingly.

In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in whole or in part to the same Owners or Charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the manner provided for under the Collision Liability clause in this Policy, and the amount so awarded so far as applicable to the interest hereby insured shall constitute a charge under this Policy.

When the contributory value of the Vessel is greater than the Agreed Value herein the liability of the Underwriters for General Average contribution (except in respect to amounts made good to the Vessel), or Salvage shall not exceed that proportion of the total contribution due from the Vessel which the amount insured hereunder bears to the contributory value; and if because of damage for which the Underwriters are liable as Particular Average, the value of the vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this policy shall first be

deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount bears to the contributory value.

**TOTAL LOSS**

In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the damaged or break up value of the Vessel or wreck shall be taken into account.

There shall be no recovery for a constructive total loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the same accident shall be taken into account, but expenses incurred prior to the tender of abandonment shall not be considered if such are to be claimed separately under the Sue and labor clause.

In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been given or not.

In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this Policy.

**SUE AND LABOR**

And in case of any Loss or Misfortune it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment.

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and or damage payable under this Policy) bears to the actual value of the salved property; whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value.

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of such excess that the Amount Insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.

**COLLISION LIABILITY**

And it is further agreed that:

   a) if the vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective subscriptions hereto bear to the Agreed Value;

      provided always that their liability in respect to any one such collision shall not exceed their proportionate part of the Agreed Value.

b) in cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or proceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels becomes limited by law, claims under the Collision Liability clause shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled to pay to the owners or charterers of the other such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or the sum payable by or to the Assured in consequence of such collision.

The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or charterers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single arbitrator, if the parties can agree upon a single arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Assured and one to be appointed by the majority (in amount) of Hull Underwriters interested; the two Arbitrators chosen to choose a third arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding.

Provided always that this clause shall in no case extend to any sum which the Assured or the Surety may become liable to pay or shall pay in consequence of, or with respect to:

a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;
b) injury to real or personal property of every description;
c) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;
d) cargo or other property on or the engagements of the Vessel;
e) loss of life, personal injury or illness,

Provided further that exclusions (b) and 8 above shall not apply to injury to other vessels or property thereon except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in 8 above.

## PILOTAGE AND TOWAGE
This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners when the Assured or the agent of the Assured accepts such contracts in accordance with established local practice.

Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Assured or the agent of the Assured:

a) to assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or
b) to indemnify those providing the pilotage or towage services against loss or liability for such damages.

It is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Policy to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement.  Provided always that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than the amount of any statutory limitation of liability to which owners are entitled or would be entitled if liability under any contractual obligation referred to in this clause were included among the liabilities subject to such statutory limitations.

## CHANGE OF OWNERSHIP
In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, canceled or withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, management, charter, requisition or classification; provided, however, that:
   a) if the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if required, be deferred until arrival at final port of discharge if with cargo, or at port of destination if in ballast;
   b) in the event of an involuntary temporary transfer by requisition or otherwise, without prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer.

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel, and, if a loss payable hereunder should occur between the time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all the rights of the Assured against the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the amount insured hereunder bears to the Agreed Value.

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, and it shall not apply to any internal changes within the offices of the Assured.

## ADDITIONAL INSURANCES
It is a condition of this insurance that no additional insurance against the Total Loss of the Vessel shall be effected to operate during the currency of this Policy by or for the account of the Assured, Owners, Managers, Operators or Mortgagees except on the interests and up to the amounts enumerated in the following Sections (a) to (g) inclusive, and no such insurance shall be subject to P.P.I., F.I.A. or other like term on any interests whatever excepting those enumerated in Section (a); provided always and notwithstanding the limitation on recovery in the Assured clause a breach of this condition shall not afford the Underwriters any defense to a claim by a Mortgagee who has accepted this Policy without knowledge of such breach:
   a) DISBURSEMENTS, MANAGERS' COMMISSIONS, PROFITS OR EXCESS OR INCREASED VALUE OF HULL AND MACHINERY AND/OR SIMILAR INTERESTS HOWEVER DESCRIBED, AND FREIGHT (INCLUDING CHARTERED FREIGHT OR ANTICIPATED FREIGHT) INSURED FOR TIME.  An amount not exceeding 25% of the Agreed Value.
   b) FREIGHT OR HIRE, UNDER CONTRACTS FOR VOYAGE.  An amount not exceeding the gross freight or hire for the current cargo passage and next succeeding cargo passage (such

insurance to include, if required, a preliminary and an intermediate ballast passage) plus the charges of insurance. In the case of a voyage charter where payment is made on a time basis, the amount shall be calculated on the estimated duration of the voyage, subject to the limitation of two cargo passages as laid down herein. Any amount permitted under this section shall be reduced, as the freight or hire is earned, by the amount so earned. Any freight or hire to be earned under the form of Charters described in (d) below shall not be permitted under this Section (b) if any part thereof is insured as permitted under said Section (d).

c) ANTICIPATED FREIGHT IF THE VESSEL SAILS IN BALLAST AND NOT UNDER CHARTER. An amount not exceeding the anticipated gross freight on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance, plus the charges of insurance. Provided, however, that no insurance shall be permitted by this Section if any insurance is effected as permitted under Section (b).

d) TIME CHARTER HIRE OR CHARTER HIRE FOR SERIES OF VOYAGES. An amount not exceeding 50% of the gross hire which is to be earned under the charter in a period not exceeding 18 months. Any amount permitted under this Section shall be reduced as the hire is earned under the charter by 50% of the gross amount so earned, but where the charter is for a period exceeding 18 months, the amount insured need not be reduced while it does not exceed 50 % of the gross hire still to be earned under the charter. An insurance permitted by this section may begin on the signing of the charter.

e) PREMIUMS. An amount not exceeding the actual premiums of all interests insured for a period not exceeding 12 months (excluding premiums insured as permitted under the foregoing sections but including, if required, the premium or estimated calls on any Protection and Indemnity or War Risks and Strikes insurance) reducing pro rata monthly.

f) RETURNS OF PREMIUM. An amount not exceeding the actual returns which are recoverable subject to "and arrival" or equivalent provision under any policy of insurance.

g) INSURANCE IRRESPECTIVE OF AMOUNT AGAINST:- Risks excluded by War, Strikes and Related Exclusions clause; risks enumerated in the Institute War Risks and Strikes clauses; and General Average and Salvage Disbursements.

## WAR, STRIKES AND RELATED EXCLUSIONS

The following conditions shall be paramount and shall supersede and nullify any contrary provisions in the Policy.

This Policy does not cover any loss, damage, or expense caused by, resulting from, or incurred as consequence of:

a) Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or

b) Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or

c) Any mine, bomb or torpedo not carried as cargo on board the Vessel; or

d) Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or

e) Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy: or

f) Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power; or

g) Malicious acts or vandalism, unless committed by the Master or Mariners and not excluded elsewhere under this War Strikes and Related Exclusions clause; or

h) Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (h) not to exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power which act is independent of the nature of

the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing.  As used herein, "power" includes any authority maintaining naval, military or air force in association with a power.

If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force.

Line numbers in this policy are for reference purposes only.

# PROTECTION AND INDEMNITY CLAUSES - SP 38
# (1955)

**Assured**:      As Described on the Declarations Page

Loss, if any, payable to Assured or order.

In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured and in conformity with the Loss Payable provisions hereof, such sums as the Assured, as owner of the vessels described on the Declarations Page shall have become legally liable to pay and shall have paid on account of:

  a) Loss of life of, or injury to, or illness of, any person;
  b) Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, injury to, or illness of any member of the crew of the vessel named herein;
  c) Loss of, or damage to or expense in connection with any fixed or movable object or property of whatever nature;
  d) Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the Assured;
  e) Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation of same, for the violation of any of the laws of the United States, or any state thereof, or of any foreign country; provided, however, that this Company shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws;
  f) Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the Assured arising out of a liability or an alleged liability of the Assured covered by this policy.

Notwithstanding the foregoing, this Company will not pay for:
  a) Claims less than the policy deductible shown on the Declarations Page each occurrence.   (For the purpose of this clause, each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence unless otherwise noted on the Declarations Page).
  b) Loss of, or damage sustained by the vessel named herein or her tackle, apparel, furniture, boats, fittings, equipment, stores, fuel, provisions or appurtenances;
  c) Loss resulting from cancellation of charters, non-collectibility of freight, bad debts, insolvency of agents or others, salvage, general average, detention, loss of use or demurrage of the vessel named herein;
  d) Any loss, damage, expense or claim with respect to any vessel or craft in tow of the vessel named herein and /or cargo thereon; provided this exclusion shall not apply to salvage services rendered in an emergency to a ship or vessel in distress, nor to loss of life and/or injury to, or illness of any person;
  e) Any claim for loss of, or damage to, or expense in respect of cargo on board the vessel named herein;

f) Any claim arising directly or indirectly under the Longshoremen's and Harbor Workers' Compensation Act or any workers' compensation act of any state or nation;

g) Any liability assumed by the Assured beyond that imposed by law; provided however that if by agreement, or otherwise, the Assured's legal liability is lessened, then this Company shall receive the benefit of such lessened liability.

h) Any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms; or sustained or caused by mines or torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained or cause by any weapon of war employing atomic fission or fusion or radioactive material; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability in respect thereof is based on negligence or otherwise, and whether in time of peace or war.

i) Any loss, damage, expense or claim collectible under the Companion Hull form of policy, whether or not the vessel named herein is actually covered by such insurance and regardless of the amount thereof.

Warranted that in the event of any occurrence which could result in a claim under this policy the Assured promptly will notify this Company upon receiving notice thereof and forward to this Company as soon as practicable all communications, processes, pleadings or other legal papers or documents relating to such occurrence.

Whenever required by this Company, the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with this Company in the defense of any claim or suit or in the appeal of any judgment.

This Company shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim covered by this policy, and he shall have the direction of such litigation or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by this Company, the liability of this Company shall be limited to the amount for which settlement could have been made. The Assured shall at the option of this Company permit this Company to conduct, with an attorney of this Company's selection, at this Company's cost and expense and under its exclusive control, a proceeding in the Assured's name to limit the Assured's liability to the extent, and in the manner provided by the present and any future statutes relative to the limitation of a ship owner's liability.

Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence).

The Assured shall not make any admission of liability, either before or after any occurrence which could result in a claim for which this Company may be liable. The Assured shall not interfere in any negotiations of this Company, for settlement of any legal proceedings in respect of any occurrence for which this Company may be liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured is obligated to and shall take such

steps to protect his and/or the Company's interests as would reasonably be taken in the absence of this or similar insurance.

Upon making payment under this policy this Company shall be vested with all of the Assured's rights of recovery against any person, corporation, vessel or interest and the Assured shall execute and deliver such instruments and papers as this Company shall require and do whatever else is necessary to secure such rights.

No action shall lie against this Company for the recovery of any loss sustained by the Assured unless such action is brought within one year after the entry of any final judgment or decree in any litigation against the Assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of such claim.
No claim or demand against this Company under this policy shall be assigned or transferred, and no person shall acquire any right against this Company by virtue of this insurance without the express consent of this Company.

It is expressly understood and agreed if and when the Assured has any interest other than as a ship owner in the vessel named herein, in no event shall this Company be liable hereunder to any greater extent than if the Assured were the sole owner and entitled to petition for limitation of liability in accordance with present and future statutes.

Where the Assured is, irrespective of this policy, covered or protected against any loss or claim which would otherwise have been paid by this Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise.

The navigation limits in the policy covering the hull, machinery, etc. of the vessel named herein are considered incorporated herein.

This insurance shall be void in case the vessel named herein, or any part thereof, shall be sold, transferred or mortgaged, or if there be any change of management or charter of the vessel, or if this policy be assigned or pledged, without the previous consent in writing of this Company.

Either party may cancel this policy by giving 30 day's notice in writing (10 days in the event of non-payment of premium); if at the option of this Company pro rata rates, if at the option of the Assured short rates, will be charged-and arrival.

# PIERS AND WHARVES COVERAGE

In consideration of an additional premium **shown on the Piers and Wharves Coverage Declarations page**, it is understood and agreed, scheduled piers and wharves (including contents if shown) at the following location are covered as per the limits of insurance, terms, conditions, and exclusions contained herein:

**LOCATION**                                    **LIMITS OF INSURANCE**

**See Declarations Page**                       **See Declarations Page**

1. This insurance to cover physical loss or damage directly caused by fire, lightning, explosion, windstorm, hail, flood, wave action, frost, theft, weight of ice and/or snow, collision with ship, vessel or floating object and contact with aircraft or object dropped therefrom.

2. All claims shall be subject to a deductible as shown in the Declarations each accident or occurrence, except claims arising out of windstorm, flood, weight of ice and/or snow, or wave-action occurring during any one period of 72 hours shall be deemed to be one occurrence and shall be subject to a deductible shown in the Declarations. The amount of the deductible shall be subtracted from the total limit of insurance shown on the Declarations for each accident or occurrence.

3. The Insurer shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

4. Notwithstanding the foregoing, this Insurer will not pay for:

    A) Loss or damage caused by the loss of sea-bed and/or river and/or the undermining of foundations and/or supporting piles caused by erosion, subsidence and/or change of sea-bed or river.

    B) Loss or damage caused by an action of marine life.

    C) Loss or damage caused by or resulting from:

        (1) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack,

            (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military naval or air forces; or

            (b) by military, naval or air forces; or

            (c) by an agent of any such government, power, authority or forces;

        (2) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

        (3) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

    D) Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Section; however, subject to the foregoing and all provisions of this Section, direct loss by fire resulting from nuclear radiation or radioactive contamination is insured against by this Section;

E)    Or resulting from mechanical failure, faulty construction or errors in design, wear and tear or any quality in the property that causes it to damage or destroy itself, hidden or latent defect, or gradual deterioration.

F)    Loss or damage to any bulkhead, seawall, wave attenuator, breakwater, jetty or similar structure designed to reduce the wave action to piers and or wharf unless scheduled on this policy.

G)    Any increased costs of construction due to any changes in codes, ordinance or law.

5.    **SPECIAL CONDITIONS**

A)    **OTHER INSURANCE:**

This insurance shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever affected, directly or indirectly, covering the same property and the Insurer shall be liable for loss or damage only for the excess value beyond the amount of such other insurance.

B)    **MISREPRESENTATION AND FRAUD:**

This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, attempted fraud, or false swearing by the Insured relating thereto.

C)    **CHANGES:**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this section or stop the Insurer from asserting any right under the terms of this section, nor shall the terms of this section be waived or changed, except by endorsement issued to form a part of this section.

D)    **NOTICE OF LOSS:**

The Insured shall as soon as practicable, report in writing to the Insurer or its agent every loss, damage or occurrence which may give rise to a claim under this section, and shall also file with the Insurer or its agent within sixty **(60)** days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

E)    **EXAMINATION UNDER OATH**:

The Insured, as often as may be reasonably required, shall exhibit to any person designated by the Insurer all that remains of any property herein described, and shall submit, and insofar as is within his or their power, cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Insurer and subscribe the same; and, as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Insurer or its representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Insurer or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Insurer might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Insurer's liability.

F)    **SETTLEMENT OF LOSS:**

All adjusted claims shall be paid or made good to the Insured within sixty **(60)** days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Insurer or it's duly authorized representative. No loss shall be paid or made good if the Insured has collected the same from others.

G)    **NO BENEFIT TO BAILEE:**

This insurance shall in no way inure directly or indirectly to the benefit of any carrier or other bailee.

H) **SUBROGATION OR LOAN**:

If in the event of loss or damage, the Insured shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Insurer, assign and transfer such claim or right of action to the Insurer or, at the Insurer's option, execute and deliver to the Insurer the customary form or loan receipt upon receiving an advance of funds in respect of the loss or damage; and will subrogate the Insurer to, or will hold in trust for the Insurer all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of the Insurer.

I) **PROTECTION OF PROPERTY:**

In case of loss, it shall be lawful and necessary for the Insured, his or their factors, servants and assigns, to sue, labor, and travel for in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the Insured of the Insurer, in recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Insurer proportionately to the extent of their respective interests.

J) **SUIT:**

No suit, action or proceeding for the recovery of any claim under this section shall be sustainable in any court of law or equity unless the same be commenced within **twelve (12) months** next after discovery by the Insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this section is issued, such limitation is invalid, then any such claim shall be void, unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state.

K) **APPRAISAL:**

If the Insured and the Insurer fail to agree as to the amount of loss, each shall, on the written demand of either made within **sixty (60) days** after receipt of proof of loss by the Insurer, select a competent and disinterested appraiser, and the appraisal shall be made at reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for **fifteen (15) days** to agree upon such umpire then, on the request of the Insured or the Insurer, such umpire shall be selected by a judge of a court of record in the State in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately, the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Insurer shall each pay his or its chosen appraisers and shall bear equally the other expenses of the appraisal and umpire. The Insurer shall not be held to have waived any of its rights by any act relating to appraisal.

L) **COINSURANCE:**

This insurance will not pay the full amount of any loss if the value of the piers and wharves at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, the Insurer will determine the most the Insurer will pay using the following steps:

   (1)   Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

   (2)   Divide the Limit of Insurance of the property by the figure determined in Step (1);

   (3)   Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

   (4)   Subtract the deductible from the figure determined in Step (3).

The Insurer will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, the Insured will either have to rely on other insurance or absorb the loss.

**Example No. 1 (Underinsurance):**

| When: | The value of the piers/wharf is | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 100,000 |
| | The Deductible is | $ | 2,500 |
| | The amount of loss is | $ | 40,000 |
| Step (1): | $250,000 x 80% = $200,000 | | |
| | (the minimum amount of insurance to meet The Insured's Coinsurance requirements) | | |
| Step (2): | $100,000 ÷ $200,000 = .50 | | |
| Step (3): | $40,000 x .50 = $20,000 | | |
| Step (4): | $20,000 – $2500 = $17,500 | | |

The Insurer will pay no more than $17,500. The remaining $22,500 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | The value of the property is | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 200,000 |
| | The Deductible is | $ | 2,500 |
| | The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet the Insured's Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. The Insurer will pay no more than $37,500 ($40,000 amount of loss minus the deductible of $2,500). If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

| When: | The value of property is: | | |
|---|---|---|---|
| | Piers/wharves at Location No. 1 | $ | 75,000 |
| | Piers/wharves at Location No. 2 | $ | 100,000 |
| | Floating Property at Location No. 2 | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance percentage for it is | | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| | The Deductible is | $ | 1,000 |
| | The amount of loss is: | | |
| | Bldg. at Location No. 2 | $ | 30,000 |
| | Personal Property at Location No. 2. | $ | 20,000 |
| | | $ | 50,000 |
| Step (1): | $250,000 x 90% = $225,000 | | |
| | (the minimum amount of insurance to meet the Insured's Coinsurance requirements and to avoid the penalty shown below) | | |
| Step (2): | $180,000 ÷ $225,000 = .80 | | |
| Step (3): | $50,000 x .80 = $40,000 | | |
| Step (4): | $40,000 – $1,000 = $39,000 | | |

The Insurer will pay no more than $39,000. The remaining $11,000 is not covered.

M)   **CANCELLATION:**

This insurance may be cancelled by the Insured by surrender there of to the Insurer or any of its authorized agents or by mailing to the Insurer, written notice stating when thereafter such cancellation shall be effective. This section may be cancelled by the Insurer, by mailing to the Insured at the address shown in this policy, or last known address written notice stating when, not less than **thirty (30) days** thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice, either by the Insured or by the Insurer shall be equivalent to mailing.

If the Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Insurer cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Insurer's check, or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the Insured.

N) **SPECIAL WINDSTORM EARNED PREMIUM PROVISION:**

    A. If this insurance is cancelled by the Insured or if the amount of insurance on any first or second tier county (or parish) location (defined as the first two coastal counties touching either the Atlantic Ocean or the Gulf of Mexico) is reduced and no coverage existed from June 1 to November 30, the return premium is 90% of the pro-rata subject to any minimum earned stipulations in the policy.

    B. If coverage existed for property located in any first or second tier county (or parish) at any time during the period from June 1 to November 30, the amount of premium returned will be a percentage of the total premium determined as follows:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-180 | 20% |
| 181-210 | 15% |
| 211-240 | 10% |
| 241-270 | 7.5% |
| 271-300 | 5% |
| 301-330 | 2.5% |
| 331-policy term | 0% |

    C. If first or second tier county (or parish) locations are added during the term of the policy, the rate will be calculated at 100% of the annual rate less the unearned factor it item B above.

    D. The provisions of the section are in addition to and do not alter any minimum earned premium provision found in this policy or its endorsements.

O) **Abandonment:**

There shall be no abandonment to the Insurer of any property.

P) **Protection and Maintenance:**

It is agreed that any protection provided for the safety of the piers and wharves shall be maintained in good order throughout the currency of the policy and shall be in use at all times and that such protection shall not be withdrawn or varied to the detriment of the interests of the Insurer without their consent.

Q) **Debris Removal:**

The Insurer will pay your expense to remove debris of Piers and Wharves caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The most that the Insurer will pay under for debris removal is $25,000 or 10% of the limit of insurance for scheduled pier or wharf, whichever is less.

R) **Total Loss:**

In the event of a total loss or constructive total loss of any scheduled item listed on the declarations page, the entire premium for that item shall be earned in full and no return premium shall be due.

# PIERS AND WHARVES COVERAGE BUSINESS INTERRUPTION COVERAGE

In consideration of an additional premium (included) shown on the Piers and Wharves Coverage Declarations page, it is understood and agreed, scheduled piers and wharves at the following location are covered as per the sum insured, terms, conditions, and exclusions contained herein:

**LOCATION**                                    **SUM INSURED**

**See Declarations Page**

1.  This insurance covers against actual loss sustained, including ordinary payrolls, extra expense or contract expenses incurred by the Assured directly caused by fire, lightning, explosion, windstorm, hail, flood, wave action, frost, theft, weight of ice and/or snow, collision with ship, vessel or floating object and contact with aircraft or object dropped therefrom.

2.  All claims shall be subject to a deductible as shown in the Declarations each accident or occurrence, except claims arising out of windstorm, flood, weight of ice and/or snow, or wave-action occurring during any one period of 72 hours shall be deemed to be one occurrence and shall be subject to a deductible shown in the Declarations. The amount of the deductible shall be subtracted from the total limit of insurance shown on the Declarations for each accident or occurrence.

3.  The Company shall not be liable beyond the actual cash value of the property at  the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

4.  Notwithstanding the foregoing, this Company will not pay for:

    A)  Loss or damage caused by the loss of sea-bed and/or river and/or the undermining of foundations and/or supporting piles caused by erosion, subsidence and/or change of sea-bed or river.

    B)  Loss or damage caused by an action of marine life.

    C)  Loss or damage caused by or resulting from:

        (1) Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack,

            (a)  by any government or sovereign power (de jure or defacto), or by any authority maintaining or using military naval or air forces; or

            (b)  by military, naval or air forces; or

            (c)  by an agent of any such government, power, authority or forces;

        (2) Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

        (3) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

    D)  Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Section; however, subject to the foregoing and all provisions of this Section, direct loss by fire resulting from nuclear radiation or radioactive contamination is insured against by this Section;

    E)  Or resulting from mechanical failure, faulty construction or errors in design, wear and tear or any quality in the property that causes it to damage or destroy itself, hidden or latent defect, or gradual deterioration;

    F)  Delay in delivery or installation unless caused by direct physical loss.

    G)  Infidelity, inventory shortages and/or mysterious or unexplained disappearances, misappropriation or other dishonest act or acts committed, alone or in collusion with others by the Assured or any partner, officer or employee of the Assured, or by any agent at the instigation of any such person(s) whether or not such act(s) are committed during business hours.

MUA 6017 0221                                                                                   Page 1 of 2

H)      Loss or damage to any bulkhead, seawall, wave attenuator, breakwater, jetty or similar structure designed to reduce the wave action to piers and or wharf unless scheduled on this policy.

I)      Any increased costs of construction due to any changes in codes, ordinance or law.

5.      In order to establish proof of loss, it shall be necessary for the Assured to render a statement signed and sworn to stating the following:

A)      The time, place and cause of the loss or damage;

B)      The extent of the interruption or suspension of business activities (i.e., total or partial expressed as a percentage of the total).

C)      Any and all records pertinent to reduction or contingencies in mitigating the interruption.

D)      Documentation relating to daily, weekly, monthly costs associated with the interruption.

6.      The Assured agrees to keep an accurate record of all merchandise covered by this endorsement and The Assurer or their authorized agent shall have the privilege at any time of inspecting such records while coverage is in force and within twelve (12) months after termination of this policy and/or this endorsement.

# COMMON POLICY CONDITIONS

All Inland Marine and Real and Personal Property Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

MUA 8003 0415

## G. SPECIAL WINDSTORM EARNED PREMIUM PROVISION:

A. If this insurance is cancelled by the Insured or if the amount of insurance on any first or second tier county (or parish) location (defined as the first two coastal counties touching either the Atlantic Ocean or the Gulf of Mexico) is reduced and no coverage existed from June 1 to November 30, the return premium is 90% of the pro-rata subject to any minimum earned stipulations in the policy.

B. If coverage existed for property located in any first or second tier county (or parish) at any time during the period from June 1 to November 30, the amount of premium returned will be a percentage of the total premium determined as follows:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-180 | 20% |
| 181-210 | 15% |
| 211-240 | 10% |
| 241-270 | 7.5% |
| 271-300 | 5% |
| 301-330 | 2.5% |
| 331-policy term | 0% |

C. If first or second tier county (or parish) locations are added during the term of the policy, the rate will be calculated at 100% of the annual rate less the unearned factor it item B above.

D, The provisions of the section are in addition to and do not alter any minimum earned premium provision found in this policy or its endorsements.

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.
2. Give us prompt notice of the loss or damage. Include a description of the property involved.
3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.
2. We will not pay you more than your financial interest in the Covered Property.
3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.
4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

6. We will not be liable for any part of a loss that has been paid or made good by others.

## F. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## G. Pair, Sets Or Parts

### 1. Pair Or Set

In case of loss or damage to any part of a pair or set we may:

a. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

b. Pay the difference between the value of the pair or set before and after the loss or damage.

### 2. Parts

In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

## J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance; or

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you.

This will not restrict your insurance.

## GENERAL CONDITIONS

## A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

**1.** During the policy period shown in the Declarations; and

**2.** Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

**1.** The actual cash value of that property;

**2.** The cost of reasonably restoring that property to its condition immediately before loss or damage; or

**3.** The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

# CONTRACTOR'S EQUIPMENT COVERAGE

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss.

### 1. Covered Property

Covered Property, as used in this coverage form, means the following property described in the Declarations:

**a.** Your contractor's equipment; and

**b.** Similar property of others in your care, custody or control.

### 2. Property Not Covered

Covered Property does not include:

**a.** Automobiles, motor trucks, trailers or other vehicles licensed for use on public roads;

**b.** Aircraft or watercraft;

**c.** Plans, blueprints, designs or specifications;

**d.** Property while waterborne, except while on ferries operating on the navigable waters of the Continental United States and Canada (other than to or from Alaska);

**e.** Property while underground or under water;

**f.** Property that you loan, lease or rent to others;

**g.** Contraband, or property in the course of illegal transportation or trade; or

**h.** Tools and clothing belonging to your employees.

### 3. Covered Causes Of Loss

Covered Causes of Loss means Direct Physical Loss Or Damage to Covered Property except those causes of loss listed in the Exclusions.

### 4. Additional Coverages

#### a. Additionally Acquired Property

If during the policy period you acquire additional property of a type already covered by this coverage form, we will cover such equipment for up to 60 days, but not beyond the end of the policy period.

The most we will pay for loss or damage is the lesser of:

**(1)** 25% of the total Limit of Insurance shown in the Declarations for all scheduled equipment; or

**(2)** $50,000

You will report values of such property to us within 60 days from the date you take possession and will pay any additional premium due. If you do not report such property, coverage will cease automatically 60 days after the date the property is acquired or at the end of the policy period, whichever occurs first.

The **Coinsurance** Additional Condition does not apply to this coverage.

This Additional Coverage does not increase the applicable Limit of Insurance shown in the Declarations.

**b. Debris Removal**

**(1)** We will pay your expenses to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** The most we will pay under this Additional Coverage is 25% of:

**(a)** The amount we pay for the direct physical loss or damage to Covered Property; plus

**(b)** The deductible in this policy applicable to that loss or damage.

**(3)** Payment under this Additional Coverage will not increase the applicable Limit of Insurance, but if:

**(a)** The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

**(b)** The debris removal expense exceeds the amount payable under the 25% limitation;

we will pay up to an additional $5,000 in any one occurrence under this Additional Coverage.

**(4)** This Additional Coverage does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**c. Preservation Of Property**

If it is necessary to move Covered Property to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

This Additional Coverage does not increase the Limit of Insurance.

**d. Pollutant Cleanup And Removal**

We will pay your expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

The limit for this Additional Coverage is in addition to the Limit of Insurance.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this coverage form.

**b. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this coverage form.

**c. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Exclusions **B.1.a.** through **B.1.c.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Delay, loss of use, loss of market or any other consequential loss.

**b.** Dishonest or criminal act committed by:

**(1)** You, any of your partners, employees, directors, trustees, or authorized representatives;

**(2)** A manager or a member if you are a limited liability company;

**(3)** Anyone else with an interest in the property, or their employees or authorized representatives; or

**(4)** Anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**c.** Work upon the property.

But if work upon the property results in fire or explosion, we will pay for direct loss or damage caused by that fire or explosion if the fire or explosion would be covered under this coverage form.

**d.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology;

creating a short circuit or other electric disturbance within an article covered under this coverage form.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes, but is not limited to, electrical current, including arcing; electrical charge produced or conducted by a magnetic or electromagnetic field; pulse of electromagnetic energy; electromagnetic waves or microwaves.

But if artificially generated electrical, magnetic or electromagnetic energy, as described above, results in fire or explosion, we will pay for the direct loss or damage caused by that fire or explosion if the fire or explosion would be covered under this coverage form.

This exclusion only applies to loss or damage to that article in which the disturbance occurs.

**e.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

    **f.** Unauthorized instructions to transfer property to any person or to any place.

    **g.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

  **3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

    **a.** Wear and tear, depreciation.

    **b.** Any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration.

    **c.** Insects, vermin, rodents.

    **d.** Corrosion, rust.

    **e.** Mechanical breakdown or failure of the Covered Property.

    **f.** Exceeding safe working load and/or side loading of any insured handling equipment.

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. Deductible

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

## E. Additional Conditions

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

**1. Coverage Territory**

    **a.** We cover property wherever located within:

      **(1)** The United States of America (including its territories and possessions);

      **(2)** Puerto Rico; and

      **(3)** Canada.

    **b.** We also cover property being shipped by air within and between points in Paragraph **a.**

**2. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

We will not pay the full amount of any loss or damage if the value of an item of Covered Property at the time of loss or damage times the Coinsurance percentage is greater than the Limit of Insurance for the item.

Instead, we will determine the most we will pay using the following steps:

    **a.** Multiply the value of the item of Covered Property at the time of loss or damage by the Coinsurance percentage;

    **b.** Divide the Limit of Insurance of the property by the figure determined in Step **a.;**

    **c.** Multiply the total amount of loss or damage, before the application of any deductible, by the figure determined in Step **b.;** and

    **d.** Subtract the deductible from the figure determined in Step **c.**

We will pay the amount determined in Step **d.** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

This provision does not apply to blanket property or rented equipment.

**F. Definitions**

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDS EXCLUDED

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

## MARINE CYBER ENDORSEMENT 11/11/19

**This clause shall be paramount and shall override anything contained in this insurance (including any endorsement(s)) inconsistent therewith.**

1        Subject only to paragraph 3 below, in no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus, computer process or any other electronic system.

2        Subject to the conditions, limitations and exclusions of the policy to which this clause attaches, the indemnity otherwise recoverable hereunder shall not be prejudiced by the use or operation of any computer, computer system, computer software programme, computer process or any other electronic system, if such use or operation is not as a means for inflicting harm.

3        Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, paragraph 1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

## INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this Policy that is inconsistent therewith.

In no case shall this insurance cover any loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from any of the following:

     a)  ionizing radiation from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

     b)  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

c)  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

d)  The radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

## (U.S.A. ENDORSEMENT) to the INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

It is hereby agreed that this policy is amended as follows:

Provided that:

(a) fire is an insured peril under this policy, and

(b) the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions, and

(c) a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses (a), (b), and (d) of the INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE – November 1, 2002.

Then, subject to the provisions of this insurance (reinsurance), any loss or damage arising directly from that fire shall not be excluded under the terms of the INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE – November 1, 2002.

Notwithstanding the foregoing, this policy shall not apply to any loss, damage, liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

In no case shall this insurance cover loss, damage, liability or expense, directly or indirectly caused by, or contributed to by, or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

**JOINT EXCESS LOSS COMMITTEE INFORMATION TECHNOLOGY HAZARDS CLAUSE**

Losses otherwise recoverable under this policy arising, directly or indirectly, out of:

i.      loss of, or damage to, or
ii.     a reduction or alteration in the functionality or operation of

a computer system, hardware, program, software, data, information repository, microchip, integrated circuit or similar device in or connected with computer equipment or non-computer equipment, whether the property of the insured or not,

shall not be aggregated.

If such losses are caused directly by one or more of the following physical perils, namely

theft of equipment, collision, sinking, grounding or stranding of carrying vessel, overturning or derailment of land conveyance, jettison or washing overboard, fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, cyclone, hurricane, earthquake, volcano, tsunami, flood, freeze or weight of snow,

then this clause shall not prevent the aggregation of losses if otherwise permitted under the terms of this policy if they are caused by any such peril(s).

**Joint Excess Loss Committee Information Technology Hazards Clause 11/16//01**

**AIMU NUCLEAR EXCLUSION CLAUSE (October-1989)**

***This clause shall be paramount and shall supersede any contrary provision of the policy:***

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage or expense due to or arising out of, directly or indirectly, nuclear reaction, radiation, or radioactive contamination regardless of how it was caused.

**WAR AND CIVIL WAR EXCLUSION CLAUSE**

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.      Under any Liability Coverage, to injury, sickness, disease, death or destruction:

      (a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death

resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE - DIRECT (U.S.A.)

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this Policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE. - If Fire is not an insured peril under this Policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

MUA 1000 0222

**AMERICAN INSTITUTE COMMUNICABLE DISEASE EXCLUSION (June 15, 2020)**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

This insurance excludes coverage for:

1)       any loss, injury, damage, liability, cost, or expense directly or indirectly arising from the actual, alleged, or suspected transmission or existence of a "Communicable Disease" or the substance or agent that causes the "Communicable Disease";

2)       any liability for, or loss, cost, or expense incurred to identify, detect, prevent, clean up, detoxify, remove, eliminate, neutralize, monitor, or test for a "Communicable Disease" or the substance or agent that causes the "Communicable Disease";

3)       any liability for, or loss, cost or expense arising out of, any loss of revenue, loss of hire, diminution of value, business interruption, loss of market, delay or any direct or indirect financial loss, howsoever described, as a result of, or relating to a "Communicable Disease" or the substance or agent that causes the "Communicable Disease";

4)       any fines, penalties, or punitive or compensatory damages as a result of, or relating to (1), (2), or (3) above.

**DEFINITION**

"Communicable Disease" means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

   a.   the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

   b.   the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

   c.   the disease, substance or agent can cause or threaten damage to human health or human welfare or can cause or threaten damage to, deterioration of, loss of value of, marketability of or loss of use of property insured hereunder.

MUA 1000 0222

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DIVING OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

In consideration of the premium charged, it is agreed that this policy does not cover any actual or alleged claim or expense for "Bodily Injury" to Divers or other in-water persons whether arising out of the act of the insured, any employee and/or subcontractor of the insured or any other person. It is further agreed that this policy does not cover any actual or alleged expense for "Property Damage" to any Diver's or Diving Equipment.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

It is hereby agreed that this policy shall not apply to any liability of one Named Insured for **Bodily Injury** or **Personal and Advertising injury** to an **Employee** of another Named Insured, nor shall it apply to **Property Damage** to real or personal property of another Named Insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ALL HAZARDS IN CONNECTION WITH DESIGNATED OPERATIONS

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

| Description Of Designated Operations: |
| --- |
| **Boat Sales; Boat Brokerage** |

In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any **Bodily Injury, Property Damage,** or **Personal and Advertising Injury** arising out of or resulting from the designated operations listed in the schedule above.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LEASED WORKER EXCLUSION

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

This policy specifically excludes any sum(s) for which the insured is or may become liable to pay including costs of defense, with respect to legal and/or contractual liability for **Bodily Injury** and/or **Personal and Advertising Injury** to any **Leased Worker**.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIABILITY EXCLUSIONS AND LIMITATIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART
PROTECTION AND INDEMNITY
MARINE LEGAL LIABILITY
EXCESS MARINE LIABILITY
PLEASURE CRAFT**

**A.  In consideration of the premium charged this policy has been issued subject to the following exclusions being added to Sections I, II and III under the Marine General Liability Coverage Part and/or to the Protection & Indemnity, and/or Marine Legal Liability and/or Excess Marine Liability Coverage, and/or Pleasure Craft:**

This insurance does not apply to:

1.  **Athletic or Sports Participants**
    **Bodily Injury** to any person while practicing for, participating in or officiating at any sports or athletic contest or exhibition that you sponsor or in which you or your employees or guests participate.

2.  **Communicable Disease or Diseases**
    **Bodily Injury** or **Personal and Advertising Injury** arising out of or resulting from the transmission or alleged transmission of any sexually transmitted disease or any other disease transmitted by bodily fluids or excretions.

3.  **Criminal Acts**
    a.  **Bodily Injury or Property damage** arising out of or resulting from a criminal act committed by any insured, including any additional insureds or
    b.  **Bodily Injury or Property damage** arising out of or resulting from a criminal act at the direction of any insured, including any additional insureds.

4.  **Punitive, Exemplary Treble Damages or Multipliers of Attorneys' Fees**
    Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

5.  **Mold, Fungi, Virus, Bacteria, Air Quality, Contaminants, Minerals or Other Harmful Materials**
    a.  **Bodily Injury, Property damage,** or **Personal and Advertising Injury** arising out of, caused by, or contributed to in any way by the existence, growth, spread, dispersal, release, or escape of any mold, fungi, lichen, virus, bacteria or other growing organism that has toxic, hazardous, noxious, pathogenic, irritating or allergen qualities or characteristics.  This exclusion applies to all such claims or causes of action, including allegations that any insured caused or contributed to conditions that encouraged the growth, depositing or establishment of such colonies of mold, lichen, fungi, virus, bacteria or other living or dead organism or

b. **Bodily Injury, Property damage,** or **Personal and Advertising Injury** arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause or

c. **Bodily Injury, Property damage,** or **Personal and Advertising Injury** arising out of, caused by, or alleging to be contributed to in any way by any insured's use, sale, installation or removal of any substance, material, or other product that is either alleged or deemed to be hazardous, toxic, irritating, pathogenic or noxious in any way, or contributes in any way to an allergic reaction.

d. **Bodily Injury, Property damage,** or **Personal and Advertising Injury** arising out of, caused by, or alleging to be contributed to in any way by toxic or hazardous properties of minerals or other substances.

**6.    Work or Premises Specifically Insured Elsewhere**

Claims, demands, requests for defense, payment, or any other cost arising out of, caused by, or occurring at premises or **The Named Insured's Work** covered under any insurance purchased by you or others on your behalf specifically for that premises or project under a Consolidated Insurance Program (CIP), Owner Controlled Insurance Program (OCIP), Contractor Controlled Insurance Program (CCIP), Wrap-Up or similar insurance program.

**7.    Failure To Complete The Named Insured's Work**

**Bodily Injury** or **Property Damage** arising out of, caused by, resulting from, or alleged to be related to any insured's failure to complete **Named Insured's Work.**

**8.    Loss, Cost or Damages Prior To Tendered Claim**

Any claim, loss, cost or damages that are projected, estimated, or otherwise assessed or adjudicated to be likely before such claims are actually made against the insured by the claimant, or their representatives, actually suffering the alleged **Bodily Injury** or **Property Damage**.

**9.    Silica Or Silica-Related Dust Exclusion**

a.    **Bodily Injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, **Silica or Silica-related dust**.

b.    **Property damage** arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, **Silica or Silica-related dust**.

c.    **Personal and advertising injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, **Silica or Silica-related dust.**

d.    Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, **Silica** or **Silica-related dust**, by any insured or by any other person or entity.

It is further agreed that this policy shall not apply to payment for investigation or defense of any loss, injury or damage or for any fine, penalty or punitive damages related to the foregoing.

The following definitions are added to the **Definitions** Section:

**Silica** means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**Silica-related dust** means a mixture or combination of silica and other dust or particles

10. **Respiratory Ailment Exclusion**

Any liability for **Bodily Injury,** sickness, disease, disability or shock including death at anytime resulting therefrom caused by any of the following:

(1)     Black Lung Disease,
(2)     Mesothelioma,
(3)     Emphysema,
(4)     Pneumoconiosis,
(5)     Pulmonary Fibrosis,
(6)     Pleurisy,
(7)     Asbestosis,
(8)     Silicosis,
(9)     Talcosis,
(10)    Mycotoxin Poisoning, Mycotoxicosis
(11)    Tricothecene Toxicosis
(12)    Stachybotryotoxicosis
(13)    Severe Acute Respiratory Syndrome (SARS)

or any lung cancer, disease or ailment caused by or aggravated by inhalation of dust and/or particulate matter.

The coverage afforded by this policy shall not apply to payment for the investigation or defense of any claim or suit related to any of the above or to any fine or penalty.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PAINT OVER SPRAY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

In consideration of the premium charged, it is agreed that this policy does not cover any actual or alleged claim or expense for **Bodily Injury** and/or **Property Damage** arising out of the dripping, spilling, dropping, overflow, overturn, overspray or wind drift of paint, stain, or similar product whether arising out of the act of the insured, any employee and/or subcontractor of the insured or any other person.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUDDEN AND ACCIDENTAL POLLUTION
## (WATERCRAFT ONLY)

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

It is hereby understood and agreed that the Pollution Exclusion, Section II – General Liability, 2. H. Pollution in this policy is deleted in its entirety in respect of accidents where the following conditions have been met:

1. The accident was caused by some intervening event, was accidental and was neither expected nor intended by the Insured; and

2. The accident is identified as commencing at a specific time and date during the term of this policy; and

3. The accident becomes known to the Insured within 72 hours after its commencement, and is reported to the Company within 30 days thereafter; and

4. The accident did not result from the Insured's intentional and willful violation of any government statute, rule or regulation; and

5. The accident and resulting loss emanated from a watercraft.

Nothing contained in this endorsement shall operate to provide any coverage for loss due to **Bodily Injury** or **Property Damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

1. Directly or indirectly resulting from subsidence caused by sub-surface operations of the Insured, or

2. Directly or indirectly resulting from the removal of, loss of, or damage to sub-surface oil, gas or any other substance, or

3. That result in any fines, penalties, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages, or

4. At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

5. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   a. Any insured; or

   b. Any person or organization for which you may be legally responsible; or

6. At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

7. At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants.**

Nothing contained in this endorsement shall operate to provide any coverage for:

Any loss, cost or expense arising out of any:

a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**; or

b. Claim or "Suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **Pollutants.**

This Insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar Federal or State Law and it is a condition of this Insurance that it shall not be submitted to the United States Coast Guard or any other Federal or State Agency as Evidence of Financial Responsibility.

**THE COMPANY DOES NOT CONSENT TO BE GUARANTORS.**

The most we will pay with respect to any claim we investigate or settle or any **Suit** against an insured we defend is **$100,000**. This limit of insurance will reduce the amount of insurance available under Each **Occurrence** Limit and General Aggregate Limit.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUBCONTRACTOR CERTIFICATE WARRANTY

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

**MARINA LEGAL LIABILITY**

**EXCESS LIABILITY**

In consideration of the premium charged, it is hereby agreed that in the event that the Named Insured hires any subcontractors that the Named Insured will obtain a Certificate of Insurance from each subcontractor evidencing valid and collectible Comprehensive General Liability Insurance in an amount of not less than $1,000,000 any one occurrence subject to aggregate limits only where customary.

It is further agreed that the following will be included as Additional Insureds under each subcontractor's Comprehensive General Liability Policy, and our Policy will be excess of any amounts recoverable thereunder.

1. Named Insured,
2. The Property Owner at any location at which the subcontractor is performing operations on behalf of the Named Insured, and
3. Anyone whom the Named Insured is required by written contract to name as an Additional Insured

NOTWITHSTANDING ANYTHING TO THE CONTRARY, INCLUDING ANY OTHER INSURANCE CLAUSE CONTAINED HEREIN OR CONTAINED IN SUBCONTRACTORS' INSURANCE POLICIES, COVERAGE UNDER THIS POLICY SHALL BE SPECIFICALLY EXCESS OF ANY AMOUNTS RECOVERABLE UNDER SUBCONTRACTORS' COMPREHENSIVE GENERAL LIABILITY POLICIES.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED NOT PURCHASED CLAUSE

This endorsement modifies insurance provided under the following:

**ALL COVERAGES**

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

MUA 1048 0610

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRAVELING WORKMEN

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

It is hereby understood and agreed that Section I - Marine Operations shall be extended whenever any persons employed by or on behalf of the Insured, in their capacity as shiprepairers, are on-board watercraft in any port, or place, for the purpose of effecting repairs.

This endorsement however does not extend to increase the transit beyond 100 miles from either scheduled location(s) or at the location where repairs are being affected as covered within this endorsement.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HOUSEBOAT FIRE PROTECTIONS

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

In consideration of premium charged, it is hereby understood and agreed that as a condition of coverage this policy it is warranted that properly working carbon monoxide, smoke and Liquid Propane Gas detectors/alarms be maintained in full force and effect during the term of this account in all berths, engine rooms, main salon and deep bilges.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HOUSEBOAT ELECTRICAL WARRANTIES

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

In consideration of premium charged, it is hereby understood and agreed that as a condition of coverage this policy it is warranted that all of the vessel's electrical wiring and electrical systems are compliant with all applicable American Boat and Yacht Counsel standards.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## HOUSEBOAT SHORE POWER WARRATIES

This endorsement modifies insurance provided under the following:

**MARINE GENERAL LIABILITY COVERAGE PART**

In consideration of premium charged, it is hereby understood and agreed that as a condition of coverage this policy it is warranted that all shore power and batteries be disconnected from the vessel while persons are not physically on board vessel when the insured watercraft is laid up on land.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMERICAN INSTITUTE  87 B-46
## S.R.&C.C. Endorsement (Hulls, Revised)

This endorsement modifies insurance provided under the following:

## HULL FORM

Insuring the Named Party shown on the DECLARATIONS hereinafter referred to as the Assured.

In consideration of an additional premium, as provided below, this insurance is extended to cover additional risks, from and after in accordance with the following clause:

"This insurance also covers damage to or destruction of the property insured directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention or loss of use, and free from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.

Notwithstanding the exclusions in the F. C. & S. Clause in the within policy "vandalism," "sabotage," and "malicious mischief," as used herein, shall be construed to include willful or malicious physical injury to or destruction of the described property caused by acts committed by an agent of any Government, party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

Until further notice the Assured shall pay, for the additional protection afforded by the above clause, an additional premium of **included** percent. The Underwriters have the right nevertheless to change this rate at any time on 15 days written notice to the Assured; but the Assured shall have the option to cancel this endorsement as of the time when such change of rate would take effect, provided previous notice of such cancellation be given to the Underwriters. The rate may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the vessel or elsewhere, may be threatened or actually exit either at the time when such notice is given or when it takes effect.

**ALL OTHER TERMS AND CONDITIONS REMAIN UCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MACHINERY DAMAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### HULL FORM

In consideration of premium charged, this policy does not cover damage to machinery (including but not limited to: engines, motors, transmissions, gearing, electrical machinery, boilers, drive shafts and inboard/outboard units) unless caused by or resulting from: fire, sinking, or total or constructive total loss of the vessel.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AIMU NUCLEAR EXCLUSION CLAUSE-HULL ENSUING FIRE COVER (MAY-1991)

This endorsement modifies insurance provided under the following:

### HULL FORM

This clause shall be paramount and shall supersede any contrary provision of the policy:

It is hereby understood and agreed that the hull policy shall not apply to any loss, damage, liability or expense due to or arising out of, whiter directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused.  However, subject to all provision of this Policy, if this Policy insures against fire, then direct physical damage to property insured located within the United States, or any territory of the United States, or Puerto Rico, by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C. & S. Clause of this Policy.

Nothing in this endorsement shall be construed to cover loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the peril of fire mentioned above.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIVILEGE TO CHARTER

This endorsement modifies insurance provided under the following:

**HULL FORM**
**PROTECTION AND INDEMNITY FORM**

Privilege is granted to charter, bareboat or otherwise, and/or sub-charter and/or enter into operating agreements.  During the term of such charter and/or sub-charter and/or operating agreement this insurance shall be for the account of the owner, charterer, sub-charterer and/or operator and waiver of these Assurer's rights of subrogation (equitable or by assignment express or implied, loan receipt or otherwise) against any individual, firm or corporation, their subsidiaries, factors or assigns for whom or with whom the Assured may be operating is granted.  Warranted that any such agreement shall be entered into prior to loss and shall be reported to these Assurers within five working days of such agreement.  Additional premium (if any) to be at rates to be agreed.  Coverage under this policy shall be excess only of any valid insurance, whether collectible or not, for such owner, charterer or operator.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION RETURNS ONLY

This endorsement modifies insurance provided under the following:

**HULL FORM**
**PROTECTION AND INDEMNITY FORM**

**NON-PAYMENT OF PREMIUM/CANCELLATION**

In event of non-payment of premium 30 days after attachment or of any additional premium when due, this Policy may be canceled by the Assurer upon 10 days written notice sent to the Assured at his last known address or in the care of the broker who negotiated this policy.  Such proportion of the premium, however, as shall have been earned up to the time of cancellation, shall be payable.  In the event of cancellation for any other reasons including but not limited to Total Loss of the Vessel, mid-term replacement of insurance, self insurance and/or other termination of coverage of vessel (excluding sale of such individual vessel(s)) occurring prior to the expiry of the Policy, full premium shall be considered earned.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CREW AND CONTRACTORS/SUBCONTRACTORS EXCLUSION

This endorsement modifies insurance provided under the following:

**PROTECTION AND INDEMNITY FORM**

In consideration of the Premium charged, it is understood and agreed that the Protection and Indemnity Policy excludes any bodily injury, death, loss, damage, claims or expense with respects to employees of the Assured and/or members of the crew and contractors/subcontractors of the Vessel insured hereunder.

**All other terms and conditions remain unchanged.**

MUA 3014 1109                                                             Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DIVING EXCLUSION

This endorsement modifies insurance provided under the following:

**PROTECTION AND INDEMNITY FORM**

It is hereby understood and agreed that Protection and Indemnity Coverage provided by this policy excludes any coverage for loss of life, bodily Injury or Illness in respect of any person or persons (irrespective of whether they be a member of the crew or a passenger) while said person is engaged in the act of diving or is engaged in activities preparatory to diving. Activities preparatory to diving include but are not limited to maintenance, testing or use of any diving apparatus or paraphernalia (spear guns, air tanks, weight belts, etc.).

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – IN WATER ACTIVITIES

This endorsement modifies insurance provided under the following:

**PROTECTION AND INDEMNITY FORM
MARINE GENERAL LIABILITY COVERAGE
EXCESS LIABILITY
BOAT DEALER
BUMBERSHOOT
MARINE LIABILITIES**

In consideration of the Premium charged, the Policy attached hereto excludes any loss, damage, claim or expense with respects to any persons intentionally over the side of the vessel for the purposes of water activity including but not limited to swimming, water skiing, tubing, wake boarding, diving, sliding from vessel, snorkeling, and like kind of activities of the Vessel(s) insured hereunder.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

MUA 3021C 0219

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**HULL FORM**
**PROTECTION AND INDEMNITY FORM**

This policy excludes claims for which the Assured/Insured or his indemnitee may be held liable as a person or organization engaged in manufacturing, distributing, selling, serving, or giving alcoholic beverages for any reason.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PROTECTION AND INDEMNITY**
**HULL**
**BOAT DEALER INVENTORY**
**PIERS AND WHARVES**
**MARINE LEGAL LIABILITY**
**EXCESS LIABILITY**
**MARINE EMPLOYERS LIABILITY**

This policy does not insure against any loss, damage, cost, liability, expense, fine or penalty, or any kind or nature whatsoever, imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.

All terms, conditions and warranties expressly contained in this Policy or endorsed hereon, or implied at law, shall be deemed amended to the extent necessary to give full force and effect to this clause

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**HULL FORM
PROTECTION AND INDEMNITY FORM**

The hull and protection and indemnity policy attached hereto shall not cover claims for an Assured against another Assured, nor shall it apply to claims against property of another Assured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# REPLACEMENT COST - PIERS AND WHARVES

This endorsement modifies insurance provided under the following:

**PIERS AND WHARVES COVERAGE**

It is understood and agreed that Clause 3 of the Piers and Wharves Coverage is deleted in its entirety and replaced with the following:

The Company shall not be liable beyond the cost to repair or replace the property with the same material of like kind and quality without deduction for depreciation.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERILS INSURED - AMENDED

This endorsement modifies insurance provided under the following:

**PIERS AND WHARVES COVERAGE**

In consideration of premium charged it is understood and agreed that the following changes are hereby made to this policy:

Piers and Wharves Coverage Item 1. is hereby deleted in its entirety and replaced with:

1.  This insurance to cover physical loss or damage directly caused by fire, lightning, explosion, windstorm, flood, wave action, frost, theft, collision with ship, vessel or floating object and contact with aircraft or object dropped therefrom.

**ALL OTHER TERMS AND CONDITIONS REMAINED UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLOOD EXCLUSION

This endorsement modifies insurance provided under the following:

## CONTRACTORS EQUIPMENT COVERAGE PART

The following is added to the **Exclusions** section and is therefore not a Covered Cause of Loss:

**Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL LOSS OF EQUIPMENT – PREMIUM EARNED

This endorsement modifies insurance provided under the following:

**CONTRACTOR'S EQUIPMENT COVERAGE PART**

In consideration of premium charged it is hereby understood and agreed that in the event of total loss of equipment covered under this policy, the premium for that item is deemed fully earned and no return premium will be due.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

MUA 8026 1109