# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HULL'S ENVIRONMENTAL SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MARINA DEL REY, LLC; UNITED STATES OF ) <br> AMERCIA, ex rel. SECRETARY OF ARMY / U.S. ) <br> ARMY CORPS OF ENGINEERS; et al, ) <br> ) <br> Defendants. ) | Case No. 6:24-cv-479-JAR |

## OPINION AND ORDER

This matter comes before the court on the motion to dismiss filed on behalf of defendant United States of America ex rel. Secretary of Army / U.S. Army Corps of Engineers. [Doc. 9].[1] Plaintiff Hull's Environmental Services, Inc. timely responded in opposition [Doc. 18], and the United States filed a reply brief [Doc. 22].

### I. BACKGROUND

Plaintiff commenced this action on November 6, 2024 in the District Court of Marshall County, Oklahoma, naming one individual, five business entities, and three governmental entities as defendants. [Doc. 2-1 (No. CJ-2024-86)]. Relevant here, plaintiff asserts that defendant Marina Del Rey, LLC obtained full interest in real property located in Marshall County ("Soldier Creek") through an Assignment of Lease dated January 8, 2016. The applicable lease—Lease No. DACW56-1-12-080 (the "Lease" or "Lease No. DACW56")—was originally issued by the Secretary of the

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination and document numbers provided by CM/ECF.

Army to a nonparty. Upon approving the assignment to Marina Del Rey, the Secretary executed a Supplemental Agreement on January 17, 2017, extending the Lease term through December 31, 2036. [*Id.* at 2, ¶¶ 1-3].

Plaintiff, who does not seek monetary relief from the United States and does not assert third-party beneficiary status under Lease No. DACW56, alleges as follows against the United States under its first cause of action:

> Plaintiff would show that the [L]ease Agreement assigned unto Marina Del Rey, LLC provides that any and all subsequent assignments and conveyances of the Lease Agreement be approved by the Secretary of the Army and therefore, in the case of Sheriff's Sale of the Lease Agreement upon foreclosure of the Plaintiff's lien,[2] that any such conveyance by the Sheriff at Sheriff's Sale be deemed approved by the Secretary of the Army.

[*Id.* at 5, ¶ 14]. The Lease, however, contains the following pertinent provisions:

> Without prior written approval of the District Engineer, the Lessee shall neither transfer nor assign this lease … nor shall this lease be assignable or transferable by process or operation of law including, but not limited to, insolvency proceedings, bankruptcy, or intestacy, or in any other manner whatever.
>
> The District Engineer, in exercising discretion to approve or disapprove transfer, assignments, or subleases, shall, among other matters, take into consideration the management qualifications of the individuals or entities that would thereby obtain a controlling interest in the facilities or services authorized hereunder, the existence of such individuals or entities with similar operations, and the ability of such individuals or entities to operate the operations authorized hereunder in the public interest.

[*Id.* at 16 (§§ 18(a), 18(b))].

---

[2] In May of 2024, plaintiff and Marina Del Rey entered into an Emergency Service Agreement to remediate damage caused by severe storms. [Doc. 2-1 at 3, ¶ 4]. In October of 2024, plaintiff filed a mechanics and materialmen's lien in the amount of $979,632.88 against Soldier Creek and Marina Del Rey's leasehold estate, asserting nonpayment for materials and services rendered. [*Id.* at 56-92].

The United States removed this action to the United States District Court for the Eastern District of Oklahoma on December 12, 2024. *See* [Doc. 2 at 2 ("This is an action against the United States of America, pursuant to 28 U.S.C. §§ 1346(a) and 1491 as it sounds in contract, and is thus removable by the United States under 28 U.S.C. §§ 1441(a), (c) and 1442(a)(1).")]. By virtue of the express consent of the parties [Doc. 55], and in accordance with Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned United States Magistrate Judge exercises complete jurisdiction over this matter through and including trial and the entry of a final judgment.

## II.   DISCUSSION

The United States seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), a lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim. It contends that plaintiff's claim against the United States effectively seeks specific performance of a contract, for which sovereign immunity has not been waived, thereby depriving the court of jurisdiction and rending this claim deficient.

### A.   SUBJECT MATTER JURISDICTION | RULE 12(B)(1)

Dismissal under Rule 12(b)(1) is not a judgment on the merits, but only a determination that the court lacks authority to adjudicate the matter. *See* Casteneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to

dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See* Basso, 495 F.2d at 909.

Since the United States is a sovereign, plaintiff must also point to a statute which provides for a specific waiver of the United States' immunity. *See* Normandy Apts., Ltd. v. U.S. Dep't of Hous. & Urb. Dev., 554 F.3d 1290, 1295 (10th Cir. 2009). Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). Sovereign immunity is jurisdictional in nature, as the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); *see also* United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). A waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor the sovereign. *See e.g.,* Lane v. Pena, 518 U.S. 187, 192 (1996).

Plaintiff invokes the Quiet Title Act (QTA), 28 U.S.C. § 2409a, as a purported waiver of sovereign immunity in this case. Specifically, plaintiff asserts that such waiver applies because foreclosure of its lien under 42 *Okla. Stat.* ("O.S.") § 141 conflicts with the Army Secretary's authority to approve future assignments and conveyances under Lease No. DACW56, as well as the Secretary's right to withhold

recognition of interests acquired in violation thereof. *See* [Doc. 18 at 5]. The United States rightly disputes this interpretation. *See* [Doc. 22 at 5-8].

### 1. Oklahoma Law Provides that Mechanics and Materialmen's Liens Affix to the Lessee's Leasehold Interest, Not the Lease Document.

According to plaintiff, its lien encumbers Lease No. DACW56 directly and may be foreclosed under Oklahoma's Mechanics and Materialmen's Lien statute, 42 O.S. § 141, by forcing assignment of said Lease without permission by the lessor (*i.e.*, the Army Secretary). Section 141 provides, however, that "[i]f the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate." Id. § 141. In construing this language, the Oklahoma Supreme Court has ruled that "§ 141 specifically provides for a lien on the improvements separate from the real estate where the person with whom the claimant's contract does not own the legal title." Statser v. Chickasaw Lumber Co., 1958 OK 177, ¶ 19, 327 P.2d 686, 690; *see also* id. at ¶ 12, 327 P.2d at 689 ("It is clear that the plaintiff and the other lien claimants did not contract directly with the [lessor] who owned the real estate; therefore, they did not acquire a lien on the real estate ...").

The United States correctly observes that plaintiff "appears to conflate a lien on a leasehold *interest* with a lien on a lease *agreement* (i.e., the legal instrument conveying the leasehold interest)." [Doc. 22 at 3 (emphasis in original)]. It is well-established under Oklahoma law that a lien on a lessee's leasehold interest may extend to certain improvements when the construction involves a new building, specific trade fixtures, or structures removable by the lessor under a lease, or those

capable of removal without damage to the underlying realty.[3] The Oklahoma Supreme Court has likewise made clear that a mechanics and materialmen's lien may not attach when the work performed constitutes alterations or repairs. *See* Statser at ¶ 26, 327 P.2d at 691. No Oklahoma authority, cited by the parties or otherwise known to the court, authorizes a mechanics and materialmen's lienholder on a lessee's leasehold estate to displace or override the *lessor's* property rights.

### 2. The Doctrine of Sovereign Immunity Precludes Enforcement of Liens on Property Owned by the United States.

Even if Oklahoma law permitted plaintiff to affix its lien to the Lease between Marina Del Rey and the federal government, the United States Supreme Court has long held that no cause of action may lie to enforce a lien on property owned by the United States. *See* Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 264 (1999) ("Our holding today is in accord with our precedent establishing that sovereign immunity bars creditors from … enforcing liens against property owned by the United States.") (citations omitted); United States ex rel. Hill v. Am. Surety Co., 200 U.S. 197, 203 (1906) ("As against the United States, no lien can be provided upon its public buildings or grounds."). There is no dispute that Soldier Creek is federally owned property. Plaintiff points to no authorities that suggest Congress intended to overrule this longstanding Supreme Court precedent, let alone anything that "'unequivocally express[es]'" such an intent. Lane, 518 U.S. at 192.

---

[3] *See e.g.*, Bell v. Tollefsen, 1989 OK 149, ¶ 6, 782 P.2d 924, 937; Dieterle Plumbing & Heating v. Green, 1980 OK 11, ¶ 11, 605 P.2d 1335, 1337; Blalack v. Hoshall's A&A Plumbing Co., 1957 OK 244, 318 P.2d 878; Whitfield v. Friensley Bros. Lumber Co., 1930 OK 18, 283 P. 985.

### 3. The Quiet Title Act's Limited Waiver of Sovereign Immunity Is Inapplicable to the Claim at Bar.

The Quiet Title Act allows a plaintiff to name the United States as a defendant in a civil action "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a); *see also* Block v. N. Dakota, 461 U.S. 273, 285 (1983) ("We hold that Congress intended the QTA to provide the exclusive means by which adverse claims could challenge the United States' title to real property."). A claimant under the QTA must "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property." 28 U.S.C. § 2409a(d). Here, plaintiff brings no claim adverse to the United States' interest in Soldier Creek. Instead, by virtue of its mechanics and materialmen's lien, plaintiff seeks reformation of Lease NO. DACW56 to eliminate the Army Secretary's contractual authority and duty to pre-approve any assignment, thereby enabling foreclosure of plaintiff's lien through a forced sheriff's sale of the subject property.

Plaintiff relies on United States v. Bedford Associates ("Bedford"), 657 F.2d 1300 (2d Cir. 1981), an out-of-circuit decision involving the federal government as a lessee rather than a property owner. In *Bedford*, the plaintiff foreclosed a mortgage on property owned by a private lessor and then sought adjudication of the federal government's leasehold interest and an assignment of rents. Id. at 1302-03. This case does not address, much less support, the application of the QTA to lien foreclosure on federally owned property or the enforcement of liens on government-held contracts. Plaintiff cites no authority, and the court is aware of none, granting a mechanics and materialmen's lienholder on a lessee's leasehold estate any right to acquire title

superior to the *lessor's* rights. The court accordingly finds that the QTA's limited waiver of sovereign immunity does not apply to the claim at issue. As such, this court lacks jurisdiction over plaintiff's cause of action against the United States.

### B.   FAILURE TO STATE A CLAIM | RULE 12(B)(6)

Dismissal pursuant to Rule 12(b)(6) "'is appropriate if the complaint alone is legally insufficient to state a claim.'" Serna v. Denver Police Dep't, 58 F.4th 1167, 1169 (10th Cir. 2023) (citation omitted). When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving part. S.E.C. v. Shields ("Shields"), 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief about the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

As set forth above, plaintiff's claim against the United States is inconsistent with the express terms of Lease No. DACW56, the plain language of 42 O.S. § 141, Oklahoma case law precluding liens on lease agreements, United States Supreme Court precedent prohibiting the enforcement of liens against federally owned

property, and the limited waiver of sovereign immunity under the Quiet Title Act. The court concludes that plaintiff has failed to state a viable claim for relief against the United States.

Lastly, the court considers plaintiff's request for leave to file an amended complaint for the purpose of "requesting further and additional relief pursuant to [the Quiet Title Act], 28 U.S.C. § 2409a." [Doc. 18 at 4]. While leave to amend should be freely granted under Fed. R. Civ. P. 15(a), "a district court may refuse to allow amendment if it would be futile." Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012, 1018 (10th Cir. 2013); Foman v. Davis, 371 U.S. 178 (1962). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." Jefferson Cty. Sch. Dist. v. Moody's Investor's Servs., 175 F.3d 848, 859 (10th Cir. 2009). Where, as here, the proposed change advances a claim that is legally insufficient on its face, the court may deny leave to amend. Sooner Prods. Co. v. McBride, 708 F.2d 510 (10th Cir. 1983); Anderson v. Suiters, 499 F.3d 1228 (10th Cir. 2007). Plaintiff has failed to offer factual or legal allegations that would cure the deficiencies identified herein; consequently, amendment of its claim against the United States would be futile.

### III.    CONCLUSION

WHEREFORE, based on the foregoing, the United States' motion to dismiss [Doc. 9] is hereby **GRANTED**.

IT IS SO ORDERED this 23rd day of July, 2025.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE